No. 19-3318

## In the
## United States Court of Appeals
## for the Seventh Circuit

WESLEY IRA PURKEY,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA, et al.,

Respondents-Appellees.

On Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:19-cv-00414 — Hon. James Patrick Hanlon, *Judge*.

## BRIEF OF THE UNITED STATES

JOSH J. MINKLER
United States Attorney

Brian P. Casey
J. Benton Hurst
Special Assistant United States Attorneys

Attorneys for Respondents-Appellees

United States Attorney's Office
400 East 9th Street, Suite 5510
Kansas City, MO 64106
(816) 426-3181

**TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................i

TABLE OF AUTHORITIES ......................................................................iv

JURISDICTIONAL STATEMENT .............................................................1

STATEMENT OF THE ISSUE....................................................................2

INTRODUCTION .......................................................................................3

STATEMENT OF THE CASE .....................................................................4

    A.    Purkey's Kidnapping, Rape, and Murder of 16-Year-Old Jennifer Long ....................................................................................4

    B.    Purkey's Confessions .................................................................6

    C.    Trial .............................................................................................9

        1.    Guilt Phase..........................................................................9

        2.    Penalty Phase...................................................................10

            a.    Aggravating Factors .............................................10

            b.    Mitigating Factors ................................................11

            c.    Rebuttal Evidence.................................................14

        3.    Verdict ..............................................................................14

    D.    Direct Appeal ...........................................................................14

    E.    Motion under 28 U.S.C. § 2255 ...............................................15

    F.    Petition under 28 U.S.C. § 2241..............................................16

    G.    Related Proceedings.................................................................18

SUMMARY OF THE ARGUMENT ............................................................20

ARGUMENT

Ineffectiveness or Absence of § 2255 Counsel Does Not Render
§ 2255 Inadequate or Ineffective......................................................22

A.     Standard of Review...................................................................22

B.     Section 2255 Bars Purkey's Claims .........................................23

C.     Section 2241 is Available Only When § 2255 is
"Inadequate or Ineffective"......................................................27

D.     Purkey Has Failed to Show that § 2255 is Inadequate or
Ineffective under Any Recognized Theory...............................29

      1.     In re Davenport..............................................................30

      2.     Garza v. Lappin ...........................................................31

      3.     Webster v. Daniels .......................................................33

E.     This Court Should Not Extend Ramirez, Martinez, and
Trevino to § 2241....................................................................35

      1.     Martinez and Trevino....................................................36

      2.     Ramirez .........................................................................42

F.     Even Applying His Framework, Purkey's Claims Lack
Merit ........................................................................................46

      1.     Double Strickland Analysis...........................................46

      2.     Eighth Circuit Law Applies...........................................47

      3.     Purkey's Claims of Ineffectiveness Lack Merit.............48

            a.     Claim I: Juror No. 13............................................49

b.      Claim II: Mitigation Evidence................................51

c.      Claim VIII: Suppression Hearing Testimony......53

CONCLUSION......................................................................................55

CERTIFICATE OF COMPLIANCE.........................................................56

CERTIFICATE OF SERVICE.................................................................57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. United States*, 911 F.3d 397 (7th Cir. 2018) ..................... 43, 44

*Atkins v. Virginia*, 536 U.S. 304 (2002) ........................................... 17, 33

*Beason v. Marske*, 926 F.3d 932 (7th Cir. 2019) ............................. 23, 30

*Brown v. Brown*, 847 F.3d 502 (7th Cir. 2017) ..................................... 47

*Brown v. Rios*, 696 F.3d 638 (7th Cir. 2012) ......................................... 23

*Camacho v. English*, 872 F.3d 811 (7th Cir. 2017) .......................... 22, 23

*Cano v. Warden USP-Terre Haute*, No. 17-cv-441, 2018 WL 3389746
    (S.D. Ind. July 12, 2018) ............................................................... 47

*Chazen v. Marske*, 938 F.3d 851 (7th Cir. 2019) ........... 23, 27, 30, 47, 48

*Coleman v. Thompson*, 501 U.S. 722 (1991) ........................................ 37

*Collins v. Holinka*, 510 F.3d 666 (7th Cir. 2007) ................................ 23

*Fields v. United States*, 201 F.3d 1025 (8th Cir. 2000) ........................ 50

*Ford v. Wainwright*, 477 U.S. 399 (1986) .............................................. 17

*Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001) ............. 27, 28, 31, 32, 42

*Goeders v. Hundley*, 59 F.3d 73 (8th Cir. 1995) ................................... 50

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ................................... 43, 44, 45

*Harris v. United States*, 367 F.3d 74 (2d Cir. 2004) ........................... 45

*Hill v. United States*, 368 U.S. 424 (1962) ........................................... 24

*Holland v. Florida*, 560 U.S. 631 (2010)................................................. 45

*Hurst v. Florida*, 577 U.S. —, 136 S.Ct. 616 (2016) .............................. 17

*In re Davenport*, 147 F.3d 605 (7th Cir. 1998) ........................... 24, 27, 30

*In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (TSC), 2019 WL 6691814 (D.D.C. Nov. 20, 2019) .................. 18, 19

*Jackson v. Shartle*, 535 Fed.Appx. 87 (3d Cir. Aug. 20, 2013) .............. 39

*Jeffers v. Chandler*, 253 F.3d 827 (5th Cir. 2001) .................................. 22

*Kapenekas v. Snyder-Norris*, No. 16-6310, 2017 WL 3725355 (6th Cir. Apr. 10, 2017)................................................................. 39

*Keller v. United States*, 657 F.3d 675 (7th Cir. 2011) ............................ 24

*Lawrence v. Armontrout*, 961 F.2d 113 (8th Cir. 1992) ................... 48, 49

*Lawrence v. Florida*, 549 U.S. 327 (2007) ............................................. 37

*Lee v. Watson*, No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6, 2019) ................................................................................................. 40

*Light v. Caraway*, 761 F.3d 809 (7th Cir. 2014).................................... 47

*Lombardo v. United States*, 860 F.3d 547 (7th Cir. 2017) ................................................................. 36, 37, 38, 40, 42, 45

*Lopez-Lopez v. Sanders*, 590 F.3d 905 (8th Cir. 2010).......................... 22

*Mader v. United States*, 654 F.3d 794 (8th Cir. 2011) .......................... 50

*Mapes v. Thomas*, 565 U.S. 266 (2012)................................................. 45

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................... 35, 37, 38, 42

*Massaro v. United States*, 538 U.S. 500 (2003) .................................... 38

*McCarthan v. Dir. of Goodwill Indus.-Suncast, Inc.*, 851 F.3d 1076
  (11th Cir. 2017) ............................................................ 22, 31, 33

*Montana v. Cross*, 829 F.3d 775 (7th Cir. 2016) ............................. 25, 27

*Morales v. Bezy*, 499 F.3d 668 (7th Cir. 2007)................................. 23, 28

*Nave v. Delo*, 62 F.3d 1024 (8th Cir. 1995)....................................... 48, 49

*New v. United States*, 652 F.3d 949 (8th Cir. 2011)............................. 50

*Poe v. LaRiva*, 834 F.3d 770 (7th Cir. 2016)..................................... 28

*Prevatte v. Merlak*, 865 F.3d 894 (7th Cir. 2017) ............................. 31, 48

*Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011) ........................... 22, 31

*Purkey v. United States*, 574 U.S. 933 (2014)................................... 16

*Purkey v. United States*, 729 F.3d 860 (8th Cir. 2013) .. 16, 26, 51, 52, 53

*Purkey v. United States*, No. 06-cv-8001, 2009 WL 3160774
  (W.D. Mo. Sept. 29, 2009) ........................................................ 15

*Purkey v. United States*, No. 06-cv-8001, 2010 WL 4386532
  (W.D. Mo. Dec. 22, 2009) ......................................................... 15

*Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015)...... 35, 42, 43, 44

*Rojas v. Unknown Party*, No. 16-cv-509, 2017 WL 4286186
  (D. Ariz. May 16, 2017)............................................................ 40

*Roper v. Simmons*, 543 U.S. 551 (2005) ........................................ 33, 34

*Roundtree v. Krueger*, 910 F.3d 312 (7th Cir. 2018) ........................... 25

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004)........................................ 23

*Sanders v. Norris*, 529 F.3d 787 (8th Cir. 2008) ................................ 49

*Sanders v. United States*, 373 U.S. 1 (1963)..................................... 25

*Shepherd v. Krueger*, 911 F.3d 861 (7th Cir. 2018) ............. 22, 23, 24, 27

*Suggs v. United States*, 705 F.3d 279 (7th Cir. 2013) ............................ 25

*Taylor v. Gilkey*, 314 F.3d 832 (7th Cir. 2002) ............... 25, 26, 28, 42, 46

*Thornton v. M7 Aerospace LP*, 796 F.3d 757 (7th Cir. 2015) ................ 22

*Trevino v. Thaler*, 569 U.S. 413 (2013) ............................................ 35, 38

*United States v. Barrett*, 178 F.3d 34 (1st Cir. 1999) ............................ 39

*United States v. Hayman*, 342 U.S. 205 (1952) ..................................... 24

*United States v. Kelton*, 518 F.2d 531 (8th Cir. 1975) ........................... 50

*United States v. Lathrop*, 634 F.3d 931 (7th Cir. 2011) ........................ 50

*United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005) .................... 14, 15

*United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018) ........................ 48

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015)
....................................... 22, 23, 24, 27, 28, 33, 34, 42, 46

**Statutes**

18 U.S.C. § 3596(a) ............................................................................ 16

28 U.S.C. §§ 451-53 (1940) ................................................................ 23

28 U.S.C. § 2241 ............................................. i, 3, 4, 16, 17, 22, 35, 41, 42

28 U.S.C. § 2242 ................................................................................ 23

28 U.S.C. § 2244 ........................................................................... 25, 26

28 U.S.C. § 2253(c)(1) ........................................................................ 24

28 U.S.C. § 2254 ........................................................................ 21, 35, 36

28 U.S.C. § 2255 ............................................................ i, 4, 15, 24, 28, 35

28 U.S.C. § 2255(a) ................................................................... 23

28 U.S.C. § 2255(e) .................................................................. 17

28 U.S.C. § 2255(f) ............................................................. 24, 41

28 U.S.C. § 2255(h) ........................................................... 25, 41

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),
  Pub. L. No. 104-132, § 105, 110 Stat. 1214 ................................. 25

**Rules**

Fed. R. App. P. 22(b) .............................................................. 24

# JURISDICTIONAL STATEMENT

Purkey's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUE

Whether ineffectiveness or absence of § 2255 counsel renders § 2255 "inadequate or ineffective" so that a federal prisoner can challenge his conviction or sentence under § 2241 even though his claims would be otherwise barred as untimely under § 2255(f) or as unauthorized second or successive claims under § 2255(h).

# INTRODUCTION

Wes Purkey was sentenced to death in the Western District of Missouri for his kidnapping, rape, and murder of 16-year-old Jennifer Long. After he exhausted his direct appeals and post-conviction proceedings, the Department of Justice scheduled his execution.

Purkey then sought relief under 28 U.S.C. § 2241, claiming that ineffective assistance of his § 2255 counsel rendered that section "inadequate or ineffective," permitting him to avoid its limits on second or successive motions and to bring his claims in the Southern District of Indiana, where he is confined.

The district court correctly dismissed Purkey's petition. Ineffectiveness or absence of § 2255 counsel does not render § 2255 inadequate or ineffective.

Reversal would create a new right to effective assistance of post-conviction counsel and eviscerate the statutory limits on post-conviction review: the requirement that prisoners seek relief in the district of their conviction, the one-year statute of limitations, and the restrictions on second or successive motions. Almost every federal prisoner could attempt to rely on the absence or ineffectiveness of his § 2255 counsel to raise potentially unlimited numbers of claims before a new judge, a new court, and potentially a new circuit. This Court should affirm.

## STATEMENT OF THE CASE

Wes Purkey awaits execution of a federal death sentence imposed for his 1998 kidnapping, rape, and murder of 16-year-old Jennifer Long. The Eighth Circuit affirmed his conviction, sentence, and the denial of his motion under 28 U.S.C. § 2255. After the Department of Justice scheduled his execution, he raised eight claims for relief in a petition under 28 U.S.C. § 2241 in the Southern District of Indiana, where he is imprisoned. The district court concluded that none of Purkey's claims satisfied the saving clause of § 2255(e) and dismissed his petition with prejudice. Purkey appeals the dismissal of only his three claims challenging the effectiveness of his § 2255 counsel.

### A. Purkey's Kidnapping, Rape, and Murder of 16-Year-Old Jennifer Long

On the morning of January 22, 1998, Purkey stopped at a grocery store in Kansas City, Missouri. (T. IV at 485, 509.)[1] He met Jennifer Long, whom he described as approximately 17 to 19 years old, and asked her if

---

[1]"DCD" refers to the district court docket entries. "Tr." refers to the eighteen volumes of the original trial transcripts, entered in the docket below at DCD 28 to 45. "Supp. Tr." refers to the three volumes of the suppression transcript, entered in the docket below at DCD 25 to 27. For the Court's convenience, Appellees adopt Purkey's convention of using "Appx." to refer to the Appendix to his Petition, entered in the docket below at DCD 23, and using "Supp. Appx." to refer to the Appendix attached to his brief in this Court.

she would like to go party and get something to drink with him. (Tr. IV at 485, 509; Tr. VII at 927-28.) Jennifer was 16 at the time. (Tr. IV at 506; Tr. V at 633; *see* DCD 48-1 (photo)). Jennifer got into Purkey's pickup and told Purkey that she had been at her high school but had left after an argument with her classmates. (Tr. IV at 485; Tr. VII at 928, 930, 994.)

Purkey told Jennifer that he needed to run back to his house in Kansas for a few minutes, and she responded that she did not want to go with him. (Tr. IV at 487, 494, 509-10; Tr. VII at 994, 996.) Purkey opened the glove box and pulled out a "boning knife," placed it under his thigh, and told her that he did not intend to let her out of the pickup. (Tr. IV at 487, 510, 545-46; Tr. VII at 994-97, 1002-03.)

Purkey drove Jennifer to his home in Kansas. (T. IV at 485, 493-94, 510.) He took her into the basement and she asked him to take her home. (Tr. IV at 510.) Instead, he held the knife in his hand and ordered her to take off her clothes. (Tr. VII at 997.) Then he raped her. (Tr. IV at 510; Tr. VII at 997, 1012-13.)

Jennifer told Purkey that she had been a virgin. (Tr. VII at 942.) He told her that he had just finished a long sentence in prison and did not want to go back. (Tr. VII at 942.) At trial, he testified: "We were sitting on the couch and I could see her fear. That increased my fear." (Tr. VII at 942.) She told him to take her to her sister's house; instead, he stabbed her

in the chest, neck, and face until the boning knife broke off in her body. (Tr. VII at 942-43, 1018, 1024.)

Purkey put Jennifer's body inside a black plastic toolbox. (Tr. VII at 1018.) He went out to a bar and had several beers. (Tr. VII at 1018, 1025-26.) Then he went to Sears to buy a chain saw. (Tr. IV at 491; Tr. VII at 1018-19; 1022-23, 1026.)

Two or three days later, Purkey cut Jennifer into pieces with the chain saw and put the pieces into black plastic bags. (Tr. IV at 429-30, 491, 511, 514-15, 524-25; Tr. VII at 998, 1026-29.) He burned her body bag-by-bag in the fireplace and spread her ashes into a septic lagoon. (Tr. IV at 492, 511-12, 514, 516-17, 542-43; Tr. VII at 1004, 1030, 1032-34; *see* Tr. V at 563-66 (recovery of remains).) He threw her teeth and part of her jaw bone onto the side of a county road. (Tr. IV at 512; Supp. Tr. I at 112-13.)

### B.     Purkey's Confessions

In December 1998, Purkey was awaiting trial for his murder of 80-year-old Mary Ruth Bales, whom he had bludgeoned to death using the claw end of a hammer in October 1998. (*See* Tr. VII at 946-47, 986; Tr. IX at 1214, 1236; Supp. Tr. I at 96, 102, 106; Supp. Tr. II at 45, 51-52.)

He sent a letter from his Kansas prison to a Kansas City, Kansas, detective suggesting that he had information about a kidnapping and murder. (Tr. IV at 421-22; Tr. VII at 948; Supp. Tr. I at 99.) Purkey told

the detective that he wanted to speak with an FBI agent so that he could serve his life sentence in federal prison. (Tr. IV at 422-24, 455-56, 460; Tr. VII at 988-89; Supp. Tr. I at 100-01, 106, 139, 146-47, 149, 171-72; Supp. Tr. II at 45-46.) He later told the FBI that he knew he was going to spend the rest of his life in the Kansas Department of Corrections because of his murder of Mary Ruth Bales and that he was willing to confess to the kidnaping, rape, and murder of Jennifer so that he could serve his sentence in federal prison. (Tr. IV at 482, 490; Tr. V at 568-59, 596-97; Supp. Tr. I at 106, 109, 167-68, 183-84; *see* Supp. Tr. II at 59.) At that time, Jennifer had been missing for eleven months and law enforcement had no information about where she was. (Tr. V at 581.) Purkey ultimately confessed to kidnapping Jennifer to law enforcement on four separate occasions. (Supp. Tr. II at 53-60; Tr. IV at 479-82, 487, 507-12, 544-46; Tr. VII at 992-1002.)

Months later, when Purkey learned that he could face the possibility of a death sentence in federal court, he became very angry. (Tr. IV at 440, 558; Tr. VII at 1005; Supp. Tr. I at 125, 191; Supp. Tr. II at 76-77.) He told the Kansas state detective that he did not know that the federal prosecutors could pursue the death penalty and that, if he had, he would never have spoken to law enforcement. (Tr. IV at 440; Supp. Tr. I at 125; *see* Supp. Tr. I at 150.)

Purkey moved to suppress his confessions in part based on his claim that the Government had reneged on a promise that he would receive a life sentence. *United States v. Purkey*, No. 01-cr-308 (W.D. Mo. Jan. 2, 2002), ECF No. 19. At a hearing on that motion, Purkey testified and once again reaffirmed that he had truthfully confessed to the kidnapping, rape, and murder of Jennifer. (Supp. Tr. II at 59.) Though Purkey's current counsel assert that his trial counsel advised him to lie at the suppression hearing (Purkey Brf. 7, 26), nothing in the record supports this assertion.

Purkey incorrectly asserts that he "has consistently maintained that he did not transport Ms. Long against her will and believed her to be a prostitute who agreed to accompany him." (Purkey Brf. 6 n.4.) As discussed above, Purkey confessed to Jennifer's kidnapping to officers four times and reaffirmed that confession under oath at the suppression hearing. Even at trial Purkey acknowledged that he knew Jennifer was a high school girl and that, even though he realized she was not a prostitute, he believed she wanted to have sex with him because she got in his truck and drank the gin and orange juice that he gave her. For example, he testified as follows:

> Q: So you knew you had a high school girl in your truck, correct, sir?
>
> A: Yes.

Tr. VII at 941. He later testified about how he knew she was not a prostitute, but how he still believed she wanted to have sex with him.

Q: You obviously realized she's not a prostitute?

A: I realized she was not a prostitute. I think I come to that conclusion a long time prior to that.

Q: When you realized she wasn't a prostitute, did you still think that she would have sex with you?

A: Oh, yeah, because she got in the truck and was drinking gin and orange juice and partying.

Tr. VII at 994.

**C.      Trial**

1.      Guilt Phase

During the guilt phase of trial, Purkey admitted raping and murdering Jennifer, but denied kidnapping her. (*See* Tr. VII at 940, 943, 949-50, 1008, 1015, 1035-36; *see also* Tr. IV at 410-11 (counsel's opening statement).) He testified that he initially believed she was a prostitute. (Tr. VII at 927.) He denied that he ever showed her a knife or that she told him she did not want to go to Kansas. (Tr. VII at 931, 934-35.) He testified that his prior confession to the kidnapping was a lie designed to obtain a life sentence in federal prison, rather than in Kansas state prison. (Tr. VII at 949-51, 996, 1036; *see* Tr. IV at 413, 415 (counsel's opening statement).) Specifically, when asked whether "here recently you have come up with

this new story that you didn't kidnap her," Purkey testified, "That's true." (Tr. VII at 1008.) The jury found Purkey guilty of the kidnapping. (Tr. VIII at 1142.)

### 2. Penalty Phase

#### a. Aggravating Factors

During the penalty phase, the Government submitted, and the jury unanimously found, six statutory aggravating factors: (1) the death of Jennifer Long occurred during the commission and attempted commission of her kidnapping; (2) Purkey killed Jennifer Long in an especially heinous, cruel, and depraved manner in that the killing involved torture and serious physical abuse; (3) the victim was particularly vulnerable due to her youthful age of 16 years; (4) Purkey had previously been convicted of an offense punishable by a term of imprisonment of more than one year involving the use, attempted use, and threatened use of a firearm against another person; (5) Purkey had previously been convicted of an offense resulting in the death of a person for which a sentence of life imprisonment was authorized by statute; and (6) Purkey had previously been convicted of two or more offenses punishable by a term of imprisonment of more than one year, committed on different occasions and involving the infliction and attempted infliction of serious bodily injury and death upon another person. (Appx. 1530-31.)

The Government submitted four non-statutory aggravating factors and the jury unanimously found three: (1) the Government established loss and harm because of the victim's personal characteristics as an individual human being and the impact of the death upon the victim's family; (2) Purkey had previously killed Mary Ruth Bales in a vicious manner in that he repeatedly struck her in the head with a hammer until she died; and (3) Purkey had a substantial criminal history. (Appx. 1531-32.)

b.     Mitigating Factors

Purkey submitted 27 mitigating factors, but no member of the jury found any of them. (Appx. 1533-36.) The first nine mitigating factors turned in some way on Purkey's mental state:

- his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired;

- he committed the offense under severe mental or emotional disturbance;

- with proper medications, such as the medications that he was currently taking, his mental illness and behaviors can be managed;

- he suffered brain injuries as a result of car accidents, drug abuse, or both;

- he suffered significant psychological and emotional damage as a result of the serious physical and emotional abuse of him by his parents;

- he suffered significant psychological and emotional damage as a result of sexual abuse of him by his mother;

- he suffered significant psychological and emotional damage as a result of growing up in a dysfunctional home environment in which alcohol abuse, sexual promiscuity, and incestuous sex were modeled as proper behavior by his parents;

- he never received treatment for the psychological and emotional damage that he suffered as a result of his parents' abuse of him; and,

- his past criminal behavior was attributable, at least in part, to the brain injuries and psychological and emotional damage that he suffered earlier in his life.

(Appx. 1533-34.)

In support of his mitigating factors, Purkey called Dr. Bruce Leeson, a clinical psychologist, to testify that Purkey suffers from "a significant degree of frontal lobe impairment" and that the "most important functions of the frontal lobe are probably inhibitory functions." (Tr. XII at 1606, 1611.) Dr. Leeson further testified that Purkey's "capacity, especially when stressed, to inhibit or delay his behavior, is severely compromised." (Tr. XIII at 1643.)

Dr. David Preston, a physician specializing in nuclear medicine, testified that Positron Emission Tomography testing revealed temporal and frontal lobe damage in Purkey's brain. (Tr. XIII at 1681-82.) Dr. Preston testified that the temporal lobes are involved in hearing, short-

term memory, and emotion and that the frontal lobe is involved in intention and planning. (Tr. XIII at 1683-84, 1693.)

Dr. Stephen Peterson, a psychiatrist, testified that at the time Purkey murdered Mary Ruth Bales and Jennifer Long, he suffered from a mental disease or defect he described as a personality disorder not otherwise specified with borderline, antisocial, obsessive-compulsive, and dependency features. (Tr. XIV at 1747-49.) He also described the mental disease or defect as having paranoid personality features. (Tr. XIV at 1766.) He stated that the primary element of Purkey's mental disease or defect arose from the abuse he suffered in childhood. (Tr. XIV at 1748.) He also opined that Purkey has impulse control problems related to some kind of brain injury. (Tr. XIV at 1759-61.) He identified that Purkey had also impaired himself with substance abuse. (Tr. XIV at 1770-71.) Dr. Peterson testified that Purkey lacked the capacity to form the intent to kill Jennifer Long. (Tr. XIV at 1775-76.)

Dr. Mark Cunningham, a clinical and forensic psychologist, testified that Purkey "is a profoundly damaged person in multiple different ways, in terms of his neurological and neurodevelopmental history, the sort of parenting that he received, the nature of his socialization as an individual." (Tr. XV at 1854.)

c.     Rebuttal Evidence

In rebuttal, the Government offered three medical professionals to respond to the testimony of Drs. Leeson, Preston, Peterson, and Cunningham. (Tr. XVI at 1962-2056; Tr. XVII at 2112-2223.)

3.     Verdict

Based on its finding six statutory aggravating factors, three non-statutory aggravating factors, and no mitigating factors, the jury unanimously recommended that Purkey be sentenced to death. (Tr. XVIII at 2311; Appx. 1537.)

D.     **Direct Appeal**

The Eighth Circuit affirmed Purkey's conviction and sentence. *United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005), Supp. Appx. 80-113. Among other holdings, the court found no clear error in the district court's decision to credit the testimony of law enforcement that they did not promise Purkey a life sentence, *id.* at 747, Supp. Appx. 85; concluded that the district court's exclusion of evidence during the penalty phase that Purkey suffered from fetal alcohol syndrome was harmless, *id.* at 758, Supp. Appx. 103; concluded that the district court's refusal to permit Dr. Peterson to present surrebuttal testimony in response to the Government's expert was harmless in light of the "significant number and serious nature

of the aggravating factors advanced by the government and found by the jury," *id.* at 760, Supp. Appx. 106.

Purkey did not seek even plain error review of the introduction of his suppression hearing testimony or the inclusion of Juror No. 13 on the jury.

### E.     Motion under 28 U.S.C. § 2255

In his motion under § 2255, Purkey raised 22 grounds for relief, 17 of which alleged that his trial or appellate counsel were ineffective. (Appx. 1546-1601.) Among other claims, Purkey asserted that his trial counsel was ineffective because he failed to hire a mitigation specialist and failed to find various witnesses who could have supported his mitigation case. (Appx. 1555-69.) Purkey also asserted that his trial counsel ineffectively failed to prepare and present three expert witnesses in mitigation. (Appx. 1570-76.) The district court denied the motion and denied a certificate of appealability. *Purkey v. United States*, No. 06-cv-8001, 2009 WL 3160774, at *6 (W.D. Mo. Sept. 29, 2009), Supp. Appx. 63; *Purkey v. United States*, No. 06-cv-8001, 2010 WL 4386532, at *10 (W.D. Mo. Dec. 22, 2009), Supp. Appx. 79.

The Eighth Circuit granted a certificate of appealability to consider whether Purkey's trial counsel provided ineffective assistance by failing to adequately prepare and present witnesses to support mitigation and whether the district court abused its discretion by declining to hold an

evidentiary hearing. *Purkey v. United States*, 729 F.3d 860, 862, 865-66 (8th Cir. 2013), Supp. Appx. 32-33, 38-39. The court affirmed, holding that "[a]ll of Purkey's proffered evidence does nothing to establish prejudice as required by *Strickland* because it is entirely cumulative." *Id.* at 865, Supp. Appx. 38. Even if Purkey's proffered evidence had been material, the court concluded:

> In light of the heinous abduction, rape, and murder of sixteen-year-old Jennifer Long and the similarly heinous bludgeoning murder of eighty-year-old Mary Ruth Bales, both committed by someone who also had been convicted of first-degree burglary, aggravated robbery, theft, aggravated escape from custody, aggravated burglary, and who also kidnaped and tried to kill an innocent bystander and raped a man in prison, we conclude that it is not substantially likely that the jury would have returned a different sentence had Purkey's proffered evidence been presented to it.

*Id.* at 868, Supp. Appx. 42-43.

After the Supreme Court's denied Purkey's petition for certiorari review of his § 2255 motion, *Purkey v. United States*, 574 U.S. 933 (2014), Purkey had exhausted his opportunities for review and could be scheduled for execution. *See* 18 U.S.C. § 3596(a).

### F.     Petition under 28 U.S.C. § 2241

On July 25, 2019, the Department of Justice scheduled Purkey's execution for December 13, 2019.

On September 12, 2019, Purkey filed an amended petition under 28 U.S.C. § 2241 raising eight grounds for relief: (1) that his trial counsel ineffectively failed to strike a juror; (2) that his trial counsel ineffectively failed to investigate and present mitigating evidence; (3) that his trial counsel perpetrated a fraud on the court by lying in his affidavit during the § 2255 proceedings; (4) that the jury may have misunderstood the instructions and therefore failed to correctly consider and give effect to mitigating evidence; (5) that his death sentence is unconstitutional under *Hurst v. Florida*, 577 U.S. —, 136 S.Ct. 616 (2016); (6) that the Federal Death Penalty Act is unconstitutional; (7) that *Atkins v. Virginia*, 536 U.S. 304 (2002), prohibits sentencing him to death because he was severely mentally ill when he committed the offense; and (8) that his trial counsel ineffectively advised him to admit that his prior confessions were true during a suppression hearing. (DCD 23; *see* Supp. Appx. 6-7).

Though he included an *Atkins* claim, challenging the imposition of his death sentence based on his alleged incompetence when he committed the offense, Purkey did not include a claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), challenging his current competence to be executed.

On November 20, 2019, the district court dismissed the petition with prejudice as barred by 28 U.S.C. § 2255(e). (Supp. Appx. 27-28.) The court also denied Purkey's motion for a stay of his execution. (Supp. Appx. 28.)

-17-

### G. Related Proceedings

On November 20, 2019—the same day that the court below dismissed Purkey's § 2241 petition and denied his motion for a stay—a United States District Court in the District of Columbia stayed the executions of Purkey and other federal prisoners pending further litigation concerning the Government's execution protocol. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (TSC), 2019 WL 6691814, at *8 (D.D.C. Nov. 20, 2019).

Six days later, Purkey filed a civil complaint in the District Court for the District of Columbia raising the *Ford* claim that he omitted from his § 2241 petition below. *Purkey v. Barr et al.*, 19-cv-3570 (TSC) (D.D.C. Nov. 26, 2019), ECF No. 1. The same day, Purkey filed a "Notice of Designation of Related Civil Cases Pending In This Or Any Other United States Court" stating that his *Ford* litigation is related to the protocol cases before the same court. *Id.*, ECF No. 3. Purkey did not identify this § 2241 litigation as a related case to the District Court in the District of Columbia, *id.*, nor did he identify his *Ford* litigation as a related case to this Court or the court below, (Purkey Brf. 5.)

Purkey then filed a motion for a preliminary injunction seeking to stay his execution. *Purkey v. Barr*, 19-cv-3570 (TSC) (D.D.C. Dec. 4, 2019), ECF No. 7. The Government responded that Purkey could not raise his

*Ford* claim in the District of Columbia because jurisdiction for that claim lies only in the Southern District of Indiana. *Id.* (D.D.C. Dec. 11, 2019), ECF No. 10. The court later granted Purkey's motion to withdraw his motion for a preliminary injunction, but ordered him to answer the Government's challenge to the court's jurisdiction over his *Ford* claim. *Id.* (D.D.C. Dec. 31, 2019). Purkey's counsel filed a response on January 14, 2020. *Id.* (D.D.C. Jan. 14, 2020), ECF No. 14.

Purkey also has two pending *Bivens* actions in the District Court for the Southern District of Indiana: On July 26, 2019, Purkey raised claims about his medical care. *Purkey v. Underwood*, 19-cv-355 (S.D. Ind. July 26, 2019). On October 28, 2019, Purkey challenged his selection to be executed. *Purkey v. Barr*, No. 19-cv-517 (S.D. Ind. Oct. 28, 2019).

## SUMMARY OF THE ARGUMENT

In 1948, Congress enacted § 2255 to require federal prisoners seeking post-conviction review of their convictions and sentences to move under that section in the sentencing court, rather than under § 2241 in the district of their confinement. In 1996, Congress enacted a one-year statute of limitations for initial § 2255 motions and a bar on second or successive motions except under limited circumstances. To reverse here would undo all of these congressionally enacted limits on post-conviction review.

In 2003, Purkey had a full and fair trial in the Western District of Missouri, followed by a full and fair appeal. In 2006, Purkey had a full and fair opportunity under § 2255 to argue that his trial counsel was ineffective. The district court denied his motion, and the Eighth Circuit granted him a full and fair appeal of that denial. He admits that he cannot satisfy the requirements to submit a second or successive § 2255 motion.

Instead, Purkey asks this Court to hold that the purported ineffectiveness of his § 2255 counsel makes § 2255 "inadequate or ineffective" so that he can petition the court below under § 2241 to challenge the effectiveness of his trial counsel 16 years after the fact. Neither this Court nor any other has accepted this argument.

In *Martinez v. Ryan*, the Supreme Court held that ineffectiveness or absence of state post-conviction counsel can excuse a state prisoner's

procedural default, permitting him to raise new ineffective-trial-counsel claims in federal court under 28 U.S.C. § 2254. Purkey argues that this Court should extend *Martinez* to conclude that ineffective § 2255 counsel can render § 2255 inadequate or ineffective.

*Martinez* concerned a state prisoner's access to federal court to make an initial claim for post-conviction relief. Purkey's requested extension of *Martinez* would undo the statutory limits on federal prisoners' claims for post-conviction relief. *Martinez* applies equally whether the state prisoner had purportedly ineffective state post-conviction counsel or no counsel at all. Federal prisoners could avoid both the statute of limitations and the bar on second or successive motions either by arguing, as Purkey does, that their § 2255 counsel was ineffective, or by arguing that they lacked § 2255 counsel. Since almost all § 2255 movants proceed pro se, all of them could attempt to file unlimited successive petitions in the districts of their incarceration at any time. Not only did Congress not intend, it explicitly legislated out, that result.

Even if this Court accepts Purkey's proposition that ineffectiveness of § 2255 counsel could, in some circumstances, render § 2255 inadequate or ineffective, he has failed to make that showing here.

In all respects, the Court should affirm.

## ARGUMENT

### Ineffectiveness or Absence of § 2255 Counsel Does Not Render § 2255 Inadequate or Ineffective

### A.    Standard of Review

This Court reviews "the denial of a § 2241 petition without deference to the district court's analysis of the legal issues." *Shepherd v. Krueger*, 911 F.3d 861, 864 (7th Cir. 2018); *Camacho v. English*, 872 F.3d 811, 813 (7th Cir. 2017).

Where, as here, a § 2241 petitioner relies on the § 2255 savings clause, the petitioner bears the burden to show that § 2255 is "inadequate or ineffective." *McCarthan v. Dir. of Goodwill Indus.-Suncast, Inc.*, 851 F.3d 1076, 1081 (11th Cir. 2017) (en banc); *Prost v. Anderson*, 636 F.3d 578, 584 (10th Cir. 2011); *Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010); *Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001); *cf. Webster v. Daniels*, 784 F.3d 1123, 1141 (7th Cir. 2015) (en banc) (noting that "[a]t the threshold stage," the petitioner "has the burden" to proffer evidence to satisfy the saving clause).

Because Purkey briefed only his three claims that § 2255 counsel was ineffective, he has waived his remaining five claims. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 771 (7th Cir. 2015).

## B. Section 2255 Bars Purkey's Claims

Section 2241 permits district courts to issue writs of habeas corpus "within their respective jurisdictions." Where a federal prisoner properly seeks relief directly under § 2241, he must petition a court in the district of his confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); *Webster*, 784 F.3d at 1144; *see* 28 U.S.C. § 2242. Prior to 1948, "§ 2241 was the normal means of obtaining collateral review of federal convictions," *Collins v. Holinka*, 510 F.3d 666, 667 (7th Cir. 2007), (though at the time its language was spread across 28 U.S.C. §§ 451-53 (1940), which themselves derived from § 14 of the Judiciary Act of 1789).

Since 1948, "[f]ederal prisoners who seek to collaterally attack their conviction or sentence must ordinarily bring an action under § 2255, 'the federal prisoner's substitute for habeas corpus.'" *Camacho*, 872 F.3d at 813 (quoting *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)). "As a general matter, § 2255 provides the exclusive means for a federal prisoner to collaterally attack his conviction or sentence." *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019); *accord Shepherd*, 911 F.3d at 862; *Morales v. Bezy*, 499 F.3d 668, 670 (7th Cir. 2007).

Section 2255 limits the prisoner's procedural avenues for relief in five ways. First, prisoners seeking relief under § 2255 must do so in the district of conviction. 28 U.S.C. § 2255(a); *Chazen v. Marske*, 938 F.3d 851,

856 (7th Cir. 2019). Congress enacted § 2255 in 1948 in part to remedy the "practical difficulties" of litigating habeas claims in the district of confinement. *See Hill v. United States*, 368 U.S. 424, 427-28 (1962); *United States v. Hayman*, 342 U.S. 205, 210-19 (1952); *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998). The "principal function" of § 2255 "is to put all post-conviction litigation in the district court that tried the case, which not only matches the litigation to the court possessing the record but also ensures that only one court of appeals will be involved." *Webster*, 784 F.3d at 1147 (Easterbrook, J., dissenting).

Second, a prisoner must file his motion under § 2255 within one year of the date on which his judgment becomes final, the date on which an unlawful impediment caused by the Government is removed, the date on which the Supreme Court recognizes a right and makes it retroactive to cases on collateral review, or the date on which facts supporting the claim could have been discovered through due diligence. 28 U.S.C. § 2255(f); *see Keller v. United States*, 657 F.3d 675, 679-80 (7th Cir. 2011).

Third, a prisoner cannot appeal a denial of a § 2255 motion without permission from the district court or court of appeals. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

Fourth, § 2255(h) "sharply limits the ability of a prisoner to bring a second or successive motion under that section." *Shepherd*, 911 F.3d at

862. "[A] district court cannot consider any 'second or successive motions' under § 2255 unless a court of appeals has certified that it contains 'either (1) newly discovered evidence that makes a clear and convincing showing of innocence or (2) a new rule of constitutional law made retroactive by the Supreme Court.'" *Montana v. Cross*, 829 F.3d 775, 781-82 (7th Cir. 2016) (quoting *Suggs v. United States*, 705 F.3d 279, 282 (7th Cir. 2013)); *see* 28 U.S.C. §§ 2255(h), 2244(a), (b). "Congress is entitled to—and through [§ 2255(h)] did—decide that two rounds of judicial review are sufficient in all but the extraordinary situation." *Taylor v. Gilkey*, 314 F.3d 832, 836 (7th Cir. 2002).

Fifth, § 2244(b)(1) prohibits the relitigation in a second or successive motion of any claim presented in a prior motion. *Taylor*, 314 F.3d at 836 (holding that the § 2244(b)(1) bar on relitigation applies to § 2255 as well as § 2254).

Congress added the one-year statute of limitations and limits on second or successive motions in 1996. Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 105, 110 Stat. 1214. Prior to AEDPA, "a petition could be filed in the sentencing court at any time—and multiple petitions could be filed, provided they did not abuse the writ." *Roundtree v. Krueger*, 910 F.3d 312, 313-14 (7th Cir. 2018). *See generally Sanders v. United States*, 373 U.S. 1 (1963). "One goal of

[AEDPA], which added § 2244(b) and [§ 2255(h)] to the Judicial Code, was to replace *Sanders* with an approach under which only defined circumstances permit successive collateral attacks." *Taylor*, 314 F.3d at 836.

Purkey filed an unsuccessful § 2255 motion in 2006 and correctly conceded below that he cannot now obtain relief under § 2255. First, none of Purkey's three claims of ineffectiveness can satisfy either of the requirements for second or successive motions under § 2255(h). Second, Purkey's § 2255 counsel previously litigated and lost six different claims that trial counsel ineffectively failed to prepare a sufficient mitigation case—claims very similar to the claim he makes now as Claim II. *See Purkey*, 729 F.3d at 868, Supp. Appx. 42-43; Appx. 1555-77 (Claims V-X); DCD 23 at 107-40. Purkey cannot relitigate the same claim again. *See* 28 U.S.C. § 2244(b)(1); *Taylor*, 314 F.3d at 836. Third, even if Purkey had not filed a previous § 2255 motion, none of his three claims of ineffectiveness would be timely under § 2255(f).

In an attempt to avoid the procedural bars that Congress has erected to his claims, Purkey turns to § 2255(e) and argues that § 2255 is "inadequate or ineffective." That claim fails.

**C. Section 2241 is Available Only When § 2255 is "Inadequate or Ineffective"**

In "rare circumstances," this Court has recognized that § 2241 can permit a court to consider post-conviction claims barred by § 2255. *Garza v. Lappin*, 253 F.3d 918, 922 (7th Cir. 2001). "[I]n the overwhelming majority of cases § 2255 specifically prohibits prisoners from circumventing § 2255 and challenging their convictions or sentences through a habeas petition under § 2241," *id.* at 921, "but it recognizes an exception," *Shepherd*, 911 F.3d at 862. "The 'savings clause' of § 2255 preserves the original remedy in those 'occasional cases' in which a motion under § 2255 'is inadequate or ineffective to test the legality of' a federal prisoner's detention." *Montana*, 829 F.3d at 782 (quoting 28 U.S.C. § 2255(e)). Where § 2255 is inadequate or ineffective, this Court has permitted a prisoner to rely on § 2241 to challenge the constitutionality of his sentence. *Webster*, 784 F.3d at 1136, 1138-39.

Generally speaking, "whether § 2255 is 'inadequate or ineffective' turns on whether a petitioner had 'a reasonable opportunity [in a prior § 2255 proceeding] to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Chazen*, 938 F.3d at 856 (quoting *Davenport*, 147 F.3d at 609). "This generally requires 'a *structural problem* in § 2255 [that] forecloses even one round of effective

-27-

collateral review,' unrelated to the prisoner's own mistakes." *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016) (quoting *Taylor*, 314 F.3d at 835) (emphasis supplied); *accord Webster*, 784 F.3d at 1136.

Section 2241 does not open merely because § 2255 is closed. *See Taylor*, 314 F.3d at 835. "[S]omething more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Webster*, 784 F.3d at 1136. "[A] prisoner cannot be permitted to lever his way into section 2241 by *making* his section 2255 remedy inadequate," *Morales*, 499 F.3d at 672, for example, by sitting on his claims until after the one-year period of § 2255(f) has run in an attempt to obtain a better forum in his district (and circuit) of incarceration.

In particular, a prisoner cannot show that § 2255 is "inadequate or ineffective" just because § 2255(h) bars his second or successive motion: "otherwise, the careful structure Congress has created to avoid repetitive filings would mean little or nothing." *Webster*, 784 F.3d at 1137 (quoting *Garza*, 253 F.3d at 921); *accord Taylor*, 314 F.3d at 835-36. The saving clause must be interpreted in light of the congressional decision in AEDPA that "only defined circumstances permit successive collateral attacks." *Taylor*, 314 F.3d at 836.

Though this Court has frequently applied § 2255(e)'s saving clause, it has never held that ineffective assistance of § 2255 counsel created a

structural problem rendering § 2255 inadequate or ineffective to test the legality of a sentence, and should not do so now.

### D. Purkey Has Failed to Show that § 2255 is Inadequate or Ineffective under Any Recognized Theory

This Court has held that § 2255 is inadequate or ineffective in three kinds of cases. In each, a prisoner argued that after he filed his initial § 2255 motion, the law or facts changed in a way that rendered his sentence unlawful, and the structure of § 2255 prevented him from raising his claim in a second or successive motion.

Purkey does not claim on appeal that his conviction or sentence is unlawful, and his claims do not depend on any change in law or facts. Rather, he raises two claims of ineffective assistance of counsel that that he could have raised in his initial § 2255 motion and another that he did. Nothing about the structure of § 2255 denied him the opportunity to raise his current claims. Purkey cannot rely on this Court's precedent to show § 2255 is inadequate or ineffective due to the alleged ineffectiveness of post-conviction counsel. To the contrary, *Webster* suggests that ineffectiveness of § 2255 counsel does not render § 2255 inadequate or ineffective.

1.    *In re Davenport*

The vast majority of cases where this Court has held § 2255 to be inadequate or ineffective fit the pattern set by *In re Davenport*, 147 F.3d 605. Purkey's case does not.

*Davenport* and its progeny involve a retroactive change in statutory interpretation that meant a prisoner's conduct was no longer a crime or his sentence exceeded the statutory maximum. Because the claims in those cases did not involve a change in constitutional interpretation, the prisoner could not have raised them in a second or successive motion under § 2255. *Davenport*, 147 F.3d at 610.

Following *Davenport*, this Court "established a three-part test to determine whether a petitioner satisfies § 2255(e)'s savings clause." *Chazen*, 938 F.3d at 856. "To pursue a claim under § 2241, a petitioner must establish that '(1) the claim relies on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive § 2255 motion; (2) the petitioner could not have invoked the decision in his first § 2255 motion and the decision applies retroactively; and (3) the error is grave enough to be deemed a miscarriage of justice.'" *Beason*, 926 F.3d at 935 (quoting *Beason*, 926 F.3d at 935). A miscarriage of justice can include the conviction of an innocent defendant or the

imposition of an illegal sentence. *Prevatte v. Merlak*, 865 F.3d 894, 897, 899 (7th Cir. 2017).

None of Purkey's three remaining claims fits the pattern of the *Davenport* cases: none relies on a new interpretation of a statute made retroactive on collateral review that renders his conduct noncriminal or his sentence unlawful. Instead, Purkey argues that his § 2255 counsel was ineffective. Unlike in *Davenport*, nothing about the structure of § 2255 prevented him from raising these claims earlier.[2]

### 2. *Garza v. Lappin*

The circumstances in *Garza*, 253 F.3d at 922, were closely analogous to those in *Davenport*, yet even further from Purkey's case.

Following exhaustion of Garza's federal-court remedies, he sought a ruling from the Inter-American Commission on Human Rights that his

---

[2]The Government's position is that a prisoner who has already unsuccessfully sought relief under § 2255 cannot establish his eligibility to file a habeas petition under the saving clause to assert a statutory challenge to his judgment on a ground that was cognizable in his initial § 2255 motion. Application of the saving clause in that circumstance would circumvent Congress's express limitations under § 2255(h) of second or successive motions to cases involving newly discovered evidence or new rules of constitutional law made retroactive on collateral review by the Supreme Court. *See McCarthan*, 851 F.3d at 1079; *Prost*, 636 F.3d 578. This Court held otherwise in *Davenport*, and the majority of other circuits agree. The Government respectfully submits, however, that the Tenth and Eleventh Circuits have the better view of the relevant statutory provisions.

trial had violated a treaty, and the Commission obliged. *Garza*, 253 F.3d at 923. He returned to federal court and argued that the Commission's decision created a treaty obligation on the federal government not to execute him. *Id.* at 922-23.

This Court concluded that Garza's argument "is the type of argument that *Davenport* envisions will fall within the savings clause of § 2255" because the Government had no enforceable obligation not to execute him until the Commission ruled and therefore it was "*literally impossible*" for him to raise it in an initial motion under § 2255. *Id.* at 923-24 (emphasis supplied). And because his claim did not rely on new evidence or a new rule of constitutional law, he could not have raised it in a successive motion either. *Id.* at 923. This Court then rejected Garza's claim on the merits. *Id.* at 924-26.

Unlike Purkey, Garza argued that the Commission's later ruling gave him the substantive right not to be executed. As discussed above, Purkey points to nothing new that would render his sentence unlawful. To the extent that Purkey alleges that his sentence is unlawful, nothing about § 2255's structure prevented him from raising those allegations earlier.

3.     *Webster v. Daniels*

In *Webster*, this Court identified a third kind of case for which § 2255 is inadequate or ineffective, but *Webster* limits itself to circumstances not present here.

In *Webster*, this Court concluded that a prisoner could use § 2241 to challenge to his death sentence under *Atkins v. Virginia*, 536 U.S. 304 (2002), based on evidence of his mental incapacity that existed at the time of his trial but was not discovered until after the conclusion of his initial § 2255. 784 F.3d at 1139. Because *Atkins* and *Roper v. Simmons*, 543 U.S. 551 (2005), had not been decided at the time Congress enacted AEDPA, this Court concluded that "the narrow set of cases presenting issues of constitutional ineligibility for execution is another lacuna in the statute." *Id.* at 1138.

This Court was careful to limit the rule of *Webster* to its facts, lest its "interpretation of § 2255 returns us to the pre-AEDPA standard for successive habeas petitions." *Id.* at 1140 & n.9. These limitations place *Webster*'s exception beyond Purkey's reach:

> First, the evidence sought to be presented must have existed at the time of the original proceedings. . . . Second, the evidence must have been unavailable at the time of trial despite diligent efforts to obtain it. Third, and most importantly, the evidence must show that the petitioner is constitutionally ineligible for the penalty he received. Because the Supreme Court has

> declared only two types of persons (minors and the intellectually disabled) categorically ineligible for a particular type of punishment, our ruling is as a matter of law limited to that set of people—those who assert that they fell into one of these categories at the time of the offense.

*Id.* at 1140 n.9.

The limitations the Court placed on *Webster* demonstrate that run-of-the-mill ineffectiveness does not render § 2255 inadequate or ineffective. Consider the Court's clear requirement that the evidence must have been unavailable "despite diligent efforts to obtain it." *Id.* at 1140 n.9. Similarly, the Court emphasized that the difference between Webster's argument and one that could not proceed under § 2241 was that the evidence was "not available during the initial trial as a result of missteps by the Social Security Administration, *not Webster's counsel.*" *Id.* at 1140 (emphasis supplied). To hammer home the point, the Court wrote: "This limitation answers most of the concerns about creating too large an exception to the exclusivity of section 2255. It will be a rare case where records that *predate* the trial are found much later, despite diligence on the part of the defense, and where those records bear directly on the constitutionality of the death sentence." *Id.*

In other words, the Court expressly excluded claims that trial counsel failed to diligently search for evidence from those claims that can

proceed under the rule in *Webster*. If lack of diligence on the part of counsel bars a claim that a sentence will be unconstitutionally enforced, ineffectiveness should not permit less substantial claims of trial error, such as those Purkey brings here.

### E. This Court Should Not Extend *Ramirez*, *Martinez*, and *Trevino* to § 2241

Because this Court has never recognized that ineffectiveness of § 2255 counsel renders § 2255 inadequate or ineffective—and its existing saving clause jurisprudence suggests the opposite—Purkey asks this Court to find yet another lacuna in § 2255. He relies on *Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015), to extend *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), from state prisoners seeking federal habeas under 28 U.S.C. § 2254 to federal prisoners seeking successive federal habeas under 28 U.S.C. § 2255. He then, without any authority, asks this Court to further extend *Ramirez* from a Rule 60(b) motion to reopen an initial § 2255 motion after complete abandonment of counsel to a § 2241 petition seeking to raise new, garden-variety ineffectiveness claims not only in a different district court, but in an entirely different circuit.

This extension would create a constitutional right to effective assistance of post-conviction counsel, undo the AEDPA amendments, and

give every defendant potentially unlimited bites at the post-conviction apple, many of them in a new circuit and before a court unfamiliar with the case. No court has ever accepted this invitation, and this Court should not be the first.

1.     *Martinez* and *Trevino*

Purkey asks this Court to extend two Supreme Court decisions concerning procedural default due to ineffective *state* habeas counsel to the § 2255(e) saving clause. Recognizing the threat that extension of that doctrine poses to the AEDPA limits on § 2255 motions, this Court held in *Lombardo v. United States*, 860 F.3d 547, 558 (7th Cir. 2017), that the rulings of those cases do not require this Court to excuse a failure to comply with § 2255 to permit a belated ineffective-trial-counsel claim to be heard on the merits. If anything, the case for refusing to extend them to Purkey's case is even stronger.

"By way of background, before state prisoners file a habeas petition in federal court under 28 U.S.C. § 2254, they must first assert their claim throughout at least one complete round of state-court review." *Id.* at 555. Failure to do so is a procedural default and federal courts will refuse to consider procedurally defaulted claims absent a showing of cause and prejudice. *Id.*

Generally speaking, ineffectiveness of state post-conviction counsel does not excuse procedural default because the attorney's actions are chargeable to the client. *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991). "[P]arties are bound by the acts of the attorney they choose to represent them, just as a principal is bound by the acts of its agent." *Lombardo*, 860 F.3d at 552. "This principle generally applies both to civil litigants and to habeas petitioners, neither of which have a constitutional right to counsel." *Id.*; *see Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (noting that "prisoners have no constitutional right to counsel" in the post-conviction context).

In *Martinez*, the prisoner had failed to raise his ineffective trial-counsel claim in state habeas proceedings, but argued that ineffectiveness of his state habeas counsel excused his procedural default. 566 U.S. at 7. Because the prisoner had no constitutional right to effective assistance of post-conviction counsel, he lacked any court in which to bring his ineffective-trial-counsel claim. *Id.* at 10-11. As an equitable exception to *Coleman*, *Martinez* held that, where the state required prisoners to raise ineffective-trial-counsel claims in initial habeas proceedings, ineffectiveness or absence of state habeas counsel could excuse procedural default that otherwise barred those claims from being brought in federal court under § 2254. *Id.* at 9-11, 18. To use this exception, a state prisoner

must show (1) that his post-conviction counsel was ineffective and (2) that his underlying ineffective-trial-counsel claim has at least "some merit." *Id.* at 13-14. *Trevino* extended *Martinez* to states where it is "virtually impossible" for a defendant to present his ineffective-trial-counsel claim on direct review. 569 U.S. at 423-29.

The holding of *Martinez* involving access to federal courts under § 2254 does not apply to federal prisoners, "who never face procedural default for ineffective-assistance claims." *Lombardo*, 860 F.3d at 557; *see Massaro v. United States*, 538 U.S. 500, 503-05 (2003). *Martinez* itself emphasized the limited circumstances in which its holding applied: "The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." 566 U.S. at 16.

For these reasons and others, this Court refused to extend *Martinez* and *Trevino* to a circumstance where *federal* post-conviction counsel erroneously miscalculated the § 2255(f) deadline, even though doing so meant that the federal prisoner had no court in which to bring his ineffective-trial-counsel claims. *Lombardo*, 860 F.3d at 558. In *Lombardo*, the structure of § 2255 did not fail; only the attorney did. *Lombardo* stands

-38-

for the proposition that the Court need not forgive a failure to comply with § 2255's procedural limitations to provide a forum for an ineffective-trial-counsel claim. *Lombardo* refutes Purkey's claim that "*Martinez* recognized that a prisoner must have effective postconviction counsel in order to vindicate the right to the effective assistance of *trial* counsel." (Purkey Brf. 16.) *See United States v. Barrett*, 178 F.3d 34, 53 (1st Cir. 1999) ("[W]here a prisoner had an opportunity to present his claim properly in his first § 2255 petition, but failed to do so, any 'ineffectiveness' of his current § 2255 petition is due to him and not to § 2255."); *Kapenekas v. Snyder-Norris*, No. 16-6310, 2017 WL 3725355, at *2-3 (6th Cir. Apr. 10, 2017) (rejecting application of *Martinez* and *Trevino* to § 2241 claim based on ineffective assistance of § 2255 counsel); *see also Jackson v. Shartle*, 535 Fed.Appx. 87, 89 n.5 (3d Cir. Aug. 20, 2013).

In Purkey's view, *Lombardo* turns not on this Court's application of *Martinez*, but on the procedural vehicle that the prisoner in that case used to bring his claim. (*See* Purkey Brf. 22-23.) If the *Lombardo* prisoner had, instead of seeking to apply the equitable tolling doctrine to excuse his belated filing of his initial § 2255, petitioned under § 2241 and claimed that the ineffectiveness of his § 2255 counsel in failing to comply with § 2255(f) rendered § 2255 inadequate or ineffective, Purkey's position implies that *Lombardo* should have come out the other way. (*See* Purkey Brf. 23.) It

cannot be that this Court denied Lombardo relief because of the title of his paper.

*Lombardo* also recognized another reason this Court should affirm here: a contrary decision would greatly erode the statutory scheme Congress put in place in AEDPA. In *Lombardo,* this Court concluded that since *Martinez* applies equally to lack of post-conviction counsel as it does to those who are ineffective, permitting a prisoner to rely on his § 2255 counsel's ineffectiveness to apply the equitable tolling doctrine would "greatly erode the statute of limitations" in § 2255(f). 860 F.3d at 560. The "vast majority" of § 2255 filers are pro se, and "would no longer have to show any actual extraordinary circumstances that stood in their way" to avoid the statute of limitations. *Id.*; *cf. Lee v. Watson*, No. 19-3399, 2019 WL 6718924, at *2 (7th Cir. Dec. 6, 2019) ("[S]omeone who waits years before seeking a writ of habeas corpus cannot, by the very act of delay, justify postponement of the execution.").

Applying *Martinez* here would go even further, as it would undermine not only the statute of limitations in § 2255(f) but also the limits on second or successive motions in § 2255(h). *See Rojas v. Unknown Party*, No. 16-cv-509, 2017 WL 4286186, at *5-6 & n.6 (D. Ariz. May 16, 2017) (rejecting application of *Martinez* to § 2241 on this ground), *report and recommendation adopted by* 2017 WL 4238735 (D. Ariz. Sept. 25,

2017). Any prisoner who belatedly discovered an ineffective-trial-counsel claim with at least "some merit" could file it under § 2241 whenever § 2255(f) or § 2255(h) prohibited his filing the claim under § 2255, as all he would have to do is point to his lack of counsel at the point when § 2255 would not have barred his claim.

Because there is no statute of limitations on § 2241, a prisoner can file under that statute as long as he's confined—or within months of his scheduled execution—no matter how long it has been since the ineffectiveness of which he complains. Because there is no limit on the number of § 2241 petitions a prisoner can file, he could continue to file them in each district and circuit to which he was ultimately transferred. And, lastly, because a § 2241 petitioner does not need permission to appeal, each of those petitions—whether it had "some merit" or not—would end up on an appellate docket. This would eviscerate § 2255. Congress cannot have meant "inadequate and ineffective" to be the exception that destroys the statute that contains it.

Not only would the extension of *Martinez* that Purkey seeks undo the 1996 AEDPA amendments, it would undo Congress's 1948 decision to channel post-conviction litigation to the court of conviction and create excellent opportunities for forum shopping. Prisoners would always have the option to file a timely § 2255 in their court of conviction, wait until

-41-

their "absence" of counsel made § 2255 inadequate or ineffective and then file a § 2241 in the district (and circuit) of their incarceration later, or both.

In fact, most prisoners would have an easier route than Purkey, since he at least had § 2255 counsel whom he now argues were ineffective. *Martinez* applies equally whether the prisoner had post-conviction counsel or not. 566 U.S. at 14. And as this Court has recognized, the remaining requirement that a claim have "some merit" would have little consequence, as meritless claims "are already subject to dismissal at the outset." *Lombardo*, 860 F.3d at 560.

The saving clause of § 2255 must be interpreted in light of AEDPA's limitations, not in derogation of them. *See Taylor*, 314 F.3d at 836. To extend *Martinez* on the theory Purkey has offered would create in practice what *Webster* forbade: a circumstance where "the careful structure Congress has created to avoid repetitive filings would mean little or nothing." 784 F.3d at 1137 (quoting *Garza*, 253 F.3d at 921).

2.      *Ramirez*

Purkey relies on *Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015), but *Ramirez* bears two critical distinctions from this case that mandate a different result here. First, *Ramirez* involves not a new § 2241 petition seeking to raise new claims, but a request to reopen an initial § 2255 motion under Rule 60(b). Second, this Court has subsequently ruled

-42-

that *Ramirez* is limited to claims that post-conviction counsel abandoned the § 2255 movant.

*First*, *Ramirez* considered not the § 2255(e) saving clause but Rule 60(b) and adheres to the limits in AEDPA that Purkey seeks to abrogate.

Rule 60(b) differs from § 2255 in that a prisoner may not use a Rule 60(b) motion to raise new claims for relief, but instead only to claim "that a procedural error precluded him from receiving a determination on the merits—for example, a claim that the federal court misapplied a statute of limitations, errantly determined that a party had failed to exhaust, or a claim of fraud on the court." *Adams v. United States*, 911 F.3d 397, 403 (7th Cir. 2018). "[I]f a Rule 60(b) motion is, in its essence, merely asking for relief that one would ask for in a motion under § 2255, such a motion would be subject to the same restrictions or requirements for successive habeas petitions." *Id.*; *accord Gonzalez v. Crosby*, 545 U.S. 524, 531-32 (2005) (considering application of § 2244 limits on second or successive petitions).

In *Ramirez*, after a district court denied a federal prisoner's § 2255 motion, the prisoner's counsel abandoned him, failing to inform him of the district court's decision, file any post-judgment motions, or file a notice of appeal. *Ramirez*, 799 F.3d at 849. The prisoner then filed a motion under Rule 60(b)(6), arguing that the ineffectiveness of his § 2255 counsel was an

extraordinary circumstance warranting reopening of the § 2255 judgment. *Id.*

This Court posed this threshold question: "whether Ramirez was entitled to use a Rule 60(b) motion, or if he has in reality filed an unauthorized second or successive petition without the necessary permission of this court." *Id.* at 850. The Court granted him relief only after concluding that his "motion was not a disguised second or successive motion under section 2255, and thus may be evaluated on its own merit." *Id.* That "Ramirez is not trying to present a new reason why he should be relieved of either his conviction or sentence" was critical to the Court's consideration of his Rule 60(b) motion on the merits. *Id.*; *see Adams*, 911 F.3d at 403 ("In [*Ramirez*], this court allowed Ramirez's 60(b) claim to move forward because he alleged a procedural error that precluded a ruling on the merits—his attorney abandoned him *after* the § 2255 proceedings, thus preventing him from pressing his ineffective assistance argument on appeal.").

Purkey cannot rely on *Ramirez* because, unlike the movant in that case, Purkey presents new reasons why he should be relieved of his sentence. He does not claim that this Court should help him overcome a "procedural barrier" to the adjudication of his initial § 2255, as Ramirez did. *Ramirez*, 799 F.3d at 849; *cf. Gonzalez*, 545 U.S. at 531. This is evident

not only because he raises new claims for relief, but also because neither this Court nor the court below could have relieved him from any procedural barrier that prevented the litigation on the merits of his initial § 2255 motion in the Western District of Missouri.

*Second*, *Ramirez* applies not to mine-run ineffectiveness but only to full abandonment, which Purkey does not claim. "[N]otwithstanding its discussion of *Martinez* and *Trevino* and its embracing of the principles underlying those cases, *Ramirez*'s holding is best construed as resting on abandonment under *Mapes* [*v. Thomas*, 565 U.S. 266 (2012)] and *Holland* [*v. Florida*, 560 U.S. 631 (2010)]." *Lombardo*, 860 F.3d at 559 & n.8; *cf.* *Harris v. United States*, 367 F.3d 74, 81-82 (2d Cir. 2004). *Lombardo*'s holding is consistent with the Supreme Court's admonition that an attack based on the omissions of collateral-review counsel "ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." *Gonzalez*, 545 U.S. at 532 n.5.

Unlike the abandoning counsel in *Ramirez*, Purkey's § 2255 counsel not only represented him throughout the § 2255 in the district court (including a motion to alter or amend the judgment under Rule 59(e)), but also filed a successful request for a certificate of appealability, represented him on appeal before the Eighth Circuit, filed a petition for rehearing

before the Eighth Circuit, and filed a petition for certiorari in the Supreme Court.

Reversing the district court here would undo "the careful structure Congress has created to avoid repetitive filings," *Webster*, 784 F.3d at 1137, and create an opportunity for rampant forum shopping to boot, *see id.* at 1149 (Easterbrook, J., dissenting). Congress, not the courts, has the prerogative to decide "[h]ow often to rerun a search for error." *Taylor*, 314 F.3d at 835. Under the scheme Congress enacted, Purkey cannot bring these claims under § 2241. This Court should affirm.

## F. Even Applying His Framework, Purkey's Claims Lack Merit

For all the reasons stated above, this Court should not rely on claimed ineffectiveness of post-conviction counsel as a basis to find § 2255 inadequate or ineffective. But even if this Court holds that Purkey can rely on *Martinez* to attempt to show that § 2255 is inadequate or ineffective, it should still affirm because he cannot make the threshold showing that § 2255 is inadequate or ineffective in his case.

### 1. Double *Strickland* Analysis

If post-conviction counsel's ineffectiveness can ever support a finding that § 2255(e) is inadequate or ineffective, it could do so only if the petitioner can satisfy two rounds of *Strickland* analysis: one for his post-

-46-

conviction counsel and another for his trial counsel. In *Brown v. Brown*, this Court held that § 2254 petitioner must both show deficient performance by his post-conviction counsel and also make a substantial claim of ineffective assistance of trial counsel. 847 F.3d 502, 513 (7th Cir. 2017). To show that § 2255 is inadequate or ineffective in his case, Purkey must make a similar two-round demonstration.

### 2. Eighth Circuit Law Applies

Furthermore, whether Purkey's post-conviction or trial counsel were ineffective should be decided using Eighth Circuit law. Though this Court has not definitively addressed this choice-of-law question, *Chazen*, 938 F.3d at 864-65 (Barrett, J., concurring), some district courts have, *Cano v. Warden USP-Terre Haute*, No. 17-cv-441, 2018 WL 3389746, at *3 (S.D. Ind. July 12, 2018) (joining other district courts that "have concluded that they should apply the law of the circuit of conviction in reviewing a sentence or conviction under section 2241, in part to avoid inconsistent results with motions under § 2255, which apply the law of the circuit where the petitioner was convicted"), and this Court has applied the law of the circuit of conviction to resolve one § 2241 claim, *Light v. Caraway*, 761 F.3d 809, 816 (7th Cir. 2014) (following Eighth Circuit and declining to create circuit split).

Had Purkey's post-conviction counsel been as effective as Purkey insists that they should have been, all of his claims would have been decided under Eighth Circuit law. Applying this Court's law would reward and encourage the kind of forum shopping that § 2255 was designed to prohibit. *Chazen*, 938 F.3d at 865 (Barrett, J., concurring).

### 3. Purkey's Claims of Ineffectiveness Lack Merit

All three of Purkey's remaining claims lack merit.[3] Claims alleging ineffective assistance of counsel are governed by *Strickland*. "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)).

Considering counsel's performance, "the court must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside of the wide range of professional competent assistance, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's

---

[3]In the Government's view, the saving clause is jurisdictional. *See United States v. Wheeler*, 886 F.3d 415, 424-25 (4th Cir. 2018). This Court has, however, concluded otherwise. *Prevatte*, 865 F.3d at 901.

strategic decisions." *Id.* at 1035 (quotation omitted). "Assuming the performance was deficient, the prejudice prong requires proof that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation omitted).

a.      Claim I: Juror No. 13

Purkey first claims that his trial counsel was ineffective for failing "to adequately examine Juror 13 during voir dire or to challenge her empanelment on the basis of inherent bais," because that juror disclosed "on a jury questionnaire that she herself had been the victim of an attempted rape at the same age as Jennifer Long." (Purkey Brf. 25.) While Purkey is not able to show prejudice, he fails in the first instance to even assert a claim deficient performance. Before the district court, Purkey initially claimed deficient performance on a theory of "implied" or "presumed" juror bias, (DCD 23 at 100), but changed that claim to one of actual bias in his reply, (DCD 58 at 18-19). On appeal, Purkey appears to return to implied bias as his sole ground for relief. (Purkey Brf. 25-26.)

Purkey cannot show he was entitled to relief for his counsel failing to move to strike Juror 13 due to implied bias because at the time of Purkey's trial, the Eighth Circuit stated that "'[o]ur case law is inconsistent as to whether juror bias may ever be presumed." *Sanders v. Norris*, 529 F.3d 787, 791 (8th Cir. 2008). In the Eighth Circuit, "when faced with conflicting

panel opinions, the earliest opinion must be followed" *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc), and that court's earlier line of cases holds that to show prejudice, Purkey must show that Juror 13 was actually biased against him. *See Goeders v. Hundley*, 59 F.3d 73, 75-76 (8th Cir. 1995); *United States v. Kelton*, 518 F.2d 531, 531 (8th Cir. 1975) (per curium) (noting that "this circuit has rejected the per se theory of implied bias in favor of a requirement that actual prejudice be demonstrated" (quotation omitted)).

As Eighth Circuit law was at most unclear on the requirement to prove actual bias, "[a] failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professionally competent assistance' sufficient to satisfy the Sixth Amendment." *New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011); *see also Fields v. United States,* 201 F.3d 1025, 1027-28 (8th Cir. 2000). Thus, under Eighth Circuit law, the performance of Purkey's trial counsel could not have been deficient, meaning also that his post-conviction counsel was not deficient in failing to raise the claim.

Nor can Purkey show any chance of success on a claim of actual bias. His claims are based on pure speculation of deficiency, where trial strategy would more reasonably explain counsel's decisions on his voir dire of Juror 13. *See, e.g.*, *United States v. Lathrop*, 634 F.3d 931, 937-38 (7th Cir. 2011)

("Even when jurors have gone so far as to make a statement of implied bias and no clear assurance of impartiality was subsequently obtained, . . . a strategy of silence by counsel could be reasonable.") Mere speculation by present counsel about the decisions of trial and post-conviction counsel does not raise a reasonable probability of deficient performance.

b.      Claim II: Mitigation Evidence

Purkey's second claim of ineffective assistance of post-conviction counsel also fails because § 2255 counsel performed competently and, to the extent Purkey proffers new evidence, it would not have mattered. Purkey claims that post-conviction counsel ineffectively failed to hire a mitigation specialist, failed to develop evidence about Purkey's childhood trauma, and failed to present evidence that Purkey suffered from PTSD. (DCD 23 at 107-40.) According to Purkey, the "full weight of mitigating evidence (including a family history of, and genetic vulnerability to, PTSD, substance abuse, and addiction, as well as a vulnerability to violence in the context of posttraumatic stress and intoxication) has never been considered by a court." (Purkey Brf. 27.)

To the contrary, Purkey's trial counsel "presented a lengthy and detailed mitigation case on behalf of Purkey, with testimony from eighteen witnesses spanning more than two days." *Purkey*, 729 F.3d at 863, Supp. Appx. 34. Trial counsel presented "Purkey's brother, daughter, and aunt,

as well as inmates and religious counsels with whom Purkey had developed friendships while in prison." *Id.* Purkey's family testified that Purkey's parents abused him physically and emotionally. *Id.*; (Tr. XII at 1520-1529, 1541-1564.) Both Drs. Peterson and Cunningham "testified in detail about the sexual abuse that Purkey suffered as a child." *Purkey*, 729 F.3d at 863, Supp. Appx. 34-35. Dr. Peterson reviewed a stack of records that stood three feet, three inches high. (Tr. XIV at 1744.)

Despite the extensive mitigation case that Purkey's trial counsel presented, his § 2255 counsel raised six claims that trial counsel ineffectively failed to present a sufficient case of mitigation, including the same claim he raises now about trial counsel's decision not to hire a mitigation specialist. Appx. 1555-77 (Claims V-X). Section 2255 counsel pursued these claims for years: They sought reconsideration after denial of Purkey's initial § 2255 motion, (Supp. Appx. 66-67), sought and were denied approval from the district court to appeal the denial of all of those claims to the Eighth Circuit, (Supp. Appx. 46), and sought and won approval to appeal from the Eighth Circuit, which ultimately affirmed, *Purkey*, 729 F.3d at 868, Supp. Appx. 31, 42-43. That court found that Purkey suffered no prejudice because (1) Purkey's additional proffered evidence was "entirely cumulative" and "insignificant compared to the rest

of the extensive case in mitigation," and (2) even assuming that Purkey's filings did present new material evidence:

> In light of the heinous abduction, rape, and murder of sixteen-year-old Jennifer Long and the similarly heinous bludgeoning murder of eighty-year-old Mary Ruth Bales, both committed by someone who also had been convicted of first-degree burglary, aggravated robbery, theft, aggravated escape from custody, aggravated burglary, and who also kidnaped and tried to kill an innocent bystander and raped a man in prison, we conclude that it is not substantially likely that the jury would have returned a different sentence had Purkey's proffered evidence been presented to it.

729 F.3d at 868, Supp. Appx. 42-43.

Given the extensive evidence that trial counsel offered in mitigation, and the Eighth Circuit's reaction to § 2255 counsel's attempt to add "new" evidence in mitigation, § 2255 counsel did not perform deficiently and there is no reasonable probability that the Eighth Circuit would have ruled differently if § 2255 counsel had proffered what marginal additional information Purkey's current counsel offers now.

### c. Claim VIII: Suppression Hearing Testimony

Without any evidentiary support, Purkey recklessly claims that his § 2255 counsel ineffectively failed to argue that his trial counsel ineffectively advised him to perjure himself at the suppression hearing. Not only does his claim lack any support in the record, even if it were true, he could not show prejudice.

Purkey's § 2255 counsel did not ineffectively fail to present an argument that Purkey's trial counsel advised him to lie at the suppression hearing. Even now, on appeal, Purkey's current counsel cannot point to any evidence that Purkey's trial counsel advised him to perjure himself. If Purkey's current counsel cannot proffer that evidence, Purkey's § 2255 counsel cannot be held deficient for failing to raise it.

Moreover, Purkey fails to show prejudice from the purported advice. Purkey had previously admitted to law enforcement on four occasions that he kidnapped Jennifer Long in Missouri and carried her to Kansas. (Supp. Tr. II at 53-60; Tr. IV at 479-82, 487, 507-12, 544-46; Tr. VII at 992-1002.) Government counsel impeached Purkey's testimony at trial with those four confessions. (Tr. VII at 992-1002.) The marginal additional impeachment value of his suppression hearing testimony was overwhelmed by his prior confessions. Even at trial, Government counsel asked him whether "here recently you have come up with this new story that you didn't kidnap her," and he testified in response, "That's true." (Tr. VIII at 1142.) Purkey cannot show prejudice.

## CONCLUSION

For the reasons stated above, this Court should affirm.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney


By:  /s/ *Brian P. Casey*
Brian P. Casey
J. Benton Hurst
Special Assistant United States Attorneys

## CERTIFICATE OF COMPLIANCE IN ACCORDANCE WITH CIRCUIT RULE 32

The foregoing BRIEF OF THE UNITED STATES complies with the type volume limitations required under Circuit Rule 32 of the United States Court of Appeals for the Seventh Circuit in that there are not more than 14,000 words and that there are 11,828 words typed in Microsoft Word word-processing this 21st day of January, 2020.

/s/ *Brian P. Casey*
Brian P. Casey
Special Assistant United States Attorney

# CERTIFICATE OF SERVICE

I certify that on January 21, 2020, I electronically filed the foregoing BRIEF FOR THE UNITED STATES with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system to the following:

Alan E. Schoenfeld
Stephanie Simon
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007

Michelle M. Law
Assistant Federal Public Defender
Western District of Missouri
901 St. Louis Street, Suite 801
Springfield, MO  65806

Rebecca E. Woodman
Attorney at Law, L.C.
1263 West 72nd Terrace
Kansas City, Missouri  64114

Attorneys for Petitioner-Appellant

/s/ *Brian P. Casey*
Brian P. Casey
Special Assistant United States Attorney