No. 19-3318

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

WESLEY IRA PURKEY,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA, et al.,

*Respondents-Appellees*.

On Appeal from the United States District Court
for the Southern District of Indiana, No. 19 Civ. 414
Before the Honorable Judge James P. Hanlon

## REPLY BRIEF FOR PETITIONER-APPELLANT

REBECCA E. WOODMAN
ATTORNEY AT LAW, L.C.
1263 W. 72nd Terrace
Kansas City, MO 64114
(785) 979-3672

MICHELLE M. LAW
ASSISTANT FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF MISSOURI
901 St. Louis Street, Suite 801
Springfield, MO 65806
(417) 873-9022

ALAN E. SCHOENFELD
STEPHANIE SIMON
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

February 11, 2020

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ......................................................................................................3

I.  SECTION 2255 IS INADEQUATE OR INEFFECTIVE TO RESOLVE
    MR. PURKEY'S UNHEARD INEFFECTIVE ASSISTANCE OF TRIAL
    COUNSEL CLAIMS ..................................................................................3

    A.  The Principles Underlying *Martinez*, *Trevino*, And
        *Ramirez* Demand This Result................................................3

    B.  The Court's Savings Clause Jurisprudence Does Not
        Preclude Reversal In This Case............................................9

    C.  AEDPA Left The Savings Clause Unchanged...................................11

II. MR. PURKEY'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
    CLAIMS HAVE SOME MERIT ....................................................................13

    A.  A Victim Of A Similar Crime Could Not Fairly Try Mr.
        Purkey Or Sentence Him To Death......................................13

    B.  Trial Counsel Ineffectively Mishandled Mr. Purkey's
        Coerced Statements That He Committed Kidnapping.........................20

    C.  The Overlooked Mitigation Evidence Would Have
        Mattered................................................................22

CONCLUSION ...................................................................................................26

CERTIFICATE OF COMPLIANCE

CIRCUIT RULE 30(d) CERTIFICATION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Adams v. United States*, 911 F.3d 397 (7th Cir. 2018) ........................................9, 12

*Bloom v. Calderon*, 132 F.3d 1267 (9th Cir. 1997) ..................................................4

*Brown v. Brown*, 847 F.3d 502 (7th Cir. 2017) ....................................................7, 13

*Burton v. Johnson*, 948 F.2d 1150 (10th Cir. 1991) ...............................................14

*Cannon v. Lockhart*, 850 F.2d 437 (8th Cir. 1988) ................................................19

*Coleman v. Thompson*, 501 U.S. 722 (1991).........................................................3

*Conaway v. Polk*, 453 F.3d 567 (4th Cir. 2006) ....................................................19

*Cwach v. United States*, 212 F.2d 520 (8th Cir. 1954)............................................18

*Eckstein v. Balcor Film Investors*, 8 F.3d 1121 (7th Cir. 1993)..............................16

*Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001) .......................................................9

*Goeders v. Hundley*, 59 F.3d 73 (8th Cir. 1995) ...................................................19

*Hale v. Fox*, 829 F.3d 1162 (10th Cir. 2016)..........................................................11

*Haussener v. United States*, 4 F.2d 884 (8th Cir. 1925)..........................................18

*Hueso v. Barnhart*,
    No. 18-6299, 2020 WL 104612 (6th Cir. Jan. 9, 2020) ................................17

*Hunley v. Godinez*, 975 F.2d 316 (7th Cir. 1992)...............................................14, 17

*Jackson v. United States*, 395 F.2d 615 (D.C. Cir. 1968)........................................14

*Johnson v. United States*, 484 F.2d 309 (8th Cir. 1973).........................................18

*In re Davenport*, 147 F.3d 605 (7th Cir. 1998)..........................................6, 9, 11, 12

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    829 F.2d 1171 (D.C. Cir. 1987)..................................................................16

*Light v. Caraway*, 761 F.3d 809 (7th Cir. 2014) ......................................................12

*Lombardo v. United States*, 860 F.3d 547 (7th Cir. 2017) ..................................7, 10

*Manuel v. MDOW Insurance Co.*, 791 F.3d 838 (8th Cir. 2015) ......................17, 18

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................................3, 5, 6, 8, 13, 16

*Mosley v. Atchison*, 689 F.3d 838 (7th Cir. 2012) ...................................................15

*Poindexter v. Mitchell*, 454 F.3d 564 (6th Cir. 2006)...............................................24

*Porter v. McCollum*, 558 U.S. 30 (2009)...................................................................25

*Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015)....................................4, 5, 7

*Rompilla v. Beard*, 545 U.S. 374 (2005) ...................................................................25

*Sanders v. Norris*, 529 F.3d 787 (8th Cir. 2008) ......................................................17

*Sears v. Upton*, 561 U.S. 945 (2010) .........................................................................25

*Simmons v. United States*, 390 U.S. 377 (1968).......................................................22

*Smith v. Phillips*, 455 U.S. 209 (1981) ......................................................................19

*State v. Larue*, 722 P.2d 1039 (Haw. 1986)..............................................................14

*Strickland v. Washington*, 466 U.S. 688 (1984) ........................................................20

*Trevino v. Thaler*, 569 U.S. 413 (2013).............................................................3, 5, 8

*United States v. Allsup*, 566 F.2d 68 (9th Cir. 1977)................................................14

*U.S. ex rel. De Vita v. McCorkle*, 248 F.2d 1 (3d Cir. 1957) ..................................14

*United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979) ..........................................14

*United States v. Jones*, 486 F.2d 476 (8th Cir. 1973)...............................................18

*United States v. Kelton*, 518 F.2d 531 (8th Cir. 1975) .............................................18

*United States v. Lathrop*, 634 F.3d 931 (7th Cir. 2011) ...........................................15

*United States v. Needham*, 852 F.3d 830 (8th Cir. 2017)...........................................8

*United States v. Tucker*, 243 F.3d 499 (8th Cir. 2001)..............................................18

*United States v. Williams*, 484 F.2d 176 (8th Cir. 1973)..........................................18

*United States v. Wood*, 299 U.S. 123 (1936) ........................................................17

*Vinyard v. United States*, 804 F.3d 1218 (7th Cir. 2015) ..........................................5

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015)......................................6, 7, 9, 11

*Wiggins v. Smith*, 539 U.S. 510 (2003)....................................................................16

*Williams v. Taylor*, 529 U.S. 362 (2000)..................................................................25

## STATUTES AND RULES

28 U.S.C.
   § 2241 ...............................................................1, 2, 7, 9, 12, 17, 21
   § 2254 ...........................................................................1, 3, 4
   § 2255 ...................................................................................*passim*

Antiterrorism and Effective Death Penalty Act of 1996,
   Pub. L. No. 104-132 ..............................................................................11

Fed. R. Crim. P.
   Rule 44...................................................................................................5
   Rule 60...................................................................................................8

## OTHER AUTHORITIES

American Bar Association, *American Bar Association Guidelines for
   the Appointment and Performance of Defense Counsel in Death
   Penalty Cases*, 31 Hofstra L. Rev. 913 (2003)................................................24

**INTRODUCTION**

The government does not meaningfully dispute the core principles that require reversal of the district court's refusal to hear Mr. Purkey's petition for a writ of habeas corpus under 28 U.S.C. § 2241. The government does not dispute that the Supreme Court's holdings in *Martinez* and *Trevino* permit state prisoners to pursue procedurally-defaulted ineffective assistance of trial counsel claims in a motion filed under 28 U.S.C. § 2254 where initial-review collateral counsel was ineffective. Nor does the government dispute that this Court found in *Ramirez* that these holdings apply with equal force to excuse procedural default in motions filed by federal prisoners under 28 U.S.C. § 2255, given that the concerns that drove the Supreme Court to decide *Martinez* and *Trevino*—i.e., the considerable risk that prisoners will inadvertently default ineffective assistance of trial counsel claims— are equally present in the federal system.

The government nevertheless refuses to acknowledge the result that ineluctably follows from these undisputed principles. Because federal prisoners must normally wait until collateral review to raise ineffective assistance of trial counsel claims, it follows necessarily from the Supreme Court's and this Court's precedents that § 2255 is "inadequate or ineffective" to resolve a federal prisoner's ineffective assistance of trial counsel claim *if* he is assisted by ineffective counsel during collateral review proceedings. And where § 2255 is inadequate or

- 1 -

ineffective, a federal prisoner may file a petition under § 2241 pursuant to the Savings Clause at § 2255(e).

The government offers certain uncontested points, but none carries the day. In particular, the government insists that Mr. Purkey's case does not fall squarely within this Court's existing Savings Clause jurisprudence and that Mr. Purkey may not file a second or successive petition under § 2255(h). Mr. Purkey does not dispute either point. But neither forecloses the relief Mr. Purkey seeks: This Court has never held that the Savings Clause may be triggered *only* in the circumstances it has previously addressed. And Mr. Purkey does not seek leave to file a second or successive petition under § 2255. Instead, Mr. Purkey seeks the opportunity to file a § 2241 petition to vindicate the ineffective assistance of trial counsel claims that he was functionally unable to bring due to the ineffective assistance of his initial-review collateral counsel. The principles underlying the Supreme Court's and this Court's jurisprudence demand that he be given the opportunity to do so.

The Court should vacate the decision below and remand for further proceedings on the merits of Mr. Purkey's claims.

**ARGUMENT**

I.     **SECTION 2255 IS INADEQUATE OR INEFFECTIVE TO RESOLVE MR. PURKEY'S UNHEARD INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS**

    A.     **The Principles Underlying *Martinez*, *Trevino*, And *Ramirez* Demand This Result**

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized initial-review collateral counsel's ineffectiveness as a basis to permit federal review of procedurally-defaulted ineffective assistance of trial counsel claims in motions filed by state prisoners under 28 U.S.C. § 2254. *Id.* at 17. Animated by a "particular concern" over "[a] prisoner's inability to present a claim of ineffective assistance of [trial] counsel," the Court established this "equitable" exception to its prior holding in *Coleman v. Thompson*, 501 U.S. 722 (1991), that an attorney's negligence does not constitute cause to excuse procedural default. *Martinez*, 566 U.S. at 12-16. The Court recognized that because many state-court systems "move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims." *Id.* at 13. The following year, in *Trevino v. Thaler*, 569 U.S. 413 (2013), the Court extended *Martinez*'s equitable rule to cases where the state-court procedures made it "'virtually impossible for appellate counsel to adequately present an ineffective assistance of trial counsel claim' on direct review." *Id.* at 423 (citation and brackets omitted).

- 3 -

A federal prisoner may find himself or herself in precisely the same position. In *Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015), this Court explained:

> Because the federal courts have no established procedure … to develop ineffective assistance claims for direct appeal, the situation of a federal petitioner is the same as the one the Court described in *Trevino*: as a practical matter, the first opportunity to present a claim of ineffective assistance of trial or direct appellate counsel is almost always on collateral review, in a motion under section 2255.

*Id.* at 853; *see also id.* at 854 ("[I]n the great majority of federal cases, ineffectiveness claims must await the first round of collateral review."). In view of this observation, and drawing on the holdings of *Martinez* and *Trevino*, this Court held that an ineffective assistance of trial counsel claim may be raised in a § 2255 proceeding notwithstanding a procedural default. *Id.* at 856. This Court had no trouble reaching this logical conclusion, finding "no reason to distinguish between actions at the state level that result in procedural default and the consequent loss of a chance for federal review, and actions at the federal level that similarly lead to a procedural default that forfeits appellate review." *Id.* at 854.[1]

---

[1] The Court even noted that "the right that Ramirez is trying to assert should be *easier* to maintain under section 2255" than under § 2254, which states that "'[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.'" *Ramirez*, 799 F.3d at 852 (emphasis added).

Underlying the holdings of *Martinez*, *Trevino*, and *Ramirez* is the same core premise: Where an individual convicted of a crime must wait until initial-review collateral proceedings to pursue an ineffective assistance of trial counsel claim that has "some merit," and where counsel at those initial-review proceedings is absent or ineffective, the constitutional right to counsel—"a bedrock principle in our justice system"—will be difficult, if not impossible, to vindicate. *Martinez*, 566 U.S. at 12-14; *Trevino*, 569 U.S. at 428-429; *Ramirez*, 799 F.3d at 853-854. This principle explains precisely why the design of § 2255 is inadequate or ineffective to test an ineffective assistance of trial counsel claim that has some merit and that was not raised by ineffective initial-review collateral counsel.

In the normal course, a federal prisoner first files a direct appeal, where he is entitled to counsel. *See* Fed. R. Crim. P. 44(a); *Vinyard v. United States*, 804 F.3d 1218, 1224-1225 (7th Cir. 2015). Direct appeals infrequently involve ineffective assistance of trial counsel claims; those claims are almost always reserved for an initial motion under § 2255. *See Ramirez*, 799 F.3d at 853 ("Raising ineffective assistance on direct appeal is imprudent … unless the contention is made first in the district court and a full record is developed." (citation omitted)). When the federal prisoner arrives at the collateral review phase, he is not entitled to counsel, and it is at this stage that he must pursue his single shot at raising ineffective

assistance of trial counsel.[2]  Where that claim is "undertaken without counsel or with ineffective counsel," the collateral review proceeding "may not have been sufficient to ensure that proper consideration was given to a substantial claim" of ineffective assistance of trial counsel.  *Martinez*, 566 U.S. at 14.  Under the constraints of § 2255, that is the only chance a federal prisoner—even one sentenced to death—will get.

In this regard, § 2255 is structurally "inadequate or ineffective" to hear a federal prisoner's ineffective assistance of trial counsel claim insofar as it does not permit him "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence" where collateral counsel is ineffective.  *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).  This application of the Savings Clause is not, as in the government's telling, an "exten[sion]" of *Martinez*, *Trevino*, and *Ramirez* (Gov. Br. 36).  Rather, this conclusion flows necessarily from the core principle underlying those cases—a

---

[2]    28 U.S.C. § 2255(h) permits the filing of a "second or successive motion" only where the movant presents "newly discovered evidence that, if proven … , no reasonable factfinder would have found the movant guilty of the offense" or where "a new rule of constitutional law [is] made retroactive to cases on collateral review[.]"  Mr. Purkey does not argue that those circumstances are present here. *See* Pet. Br. 23.  Here, as in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), the inability of the petitioner to raise a claim with some merit that challenges his confinement in a second or successive motion under § 2255 militates in favor of applying the Savings Clause.

principle the government does not contest.  Nor does this application of the

Savings Clause result from a simple "lack of success with a[n earlier] section 2255

motion."  *Webster*, 784 F.3d at 1136; *see id.* (finding that "there must be some kind

of structural problem with section 2255 before section 2241 becomes available").

Where ineffective § 2255 counsel fails to raise ineffective assistance of trial

counsel claims that have some merit during initial-review collateral proceedings, a

prisoner like Mr. Purkey is functionally unable to have even one shot at judicial

review of those claims.

The government argues that *Ramirez* is not controlling because (1) *Ramirez*

did not address the Savings Clause and (2) its holding is based on abandonment by

counsel, not on "mine-run ineffectiveness."  Gov. Br. 43-45.  Neither argument is

persuasive.  *First*, regardless of whether *Ramirez* addressed the Savings Clause

directly, its holding "drew in part on the principles underlying *Martinez* and

*Trevino* relative to the importance of ineffective assistance claims and petitioners'

inability to raise them at an earlier stage in the proceedings."  *Lombardo v. United

States*, 860 F.3d 547, 558 (7th Cir. 2017) (citing *Ramirez*, 799 F.3d at 853-854);

*Brown v. Brown*, 847 F.3d 502, 509-510 (7th Cir. 2017) ("This court applied the

*Martinez-Trevino* doctrine to federal prisoners who bring motions for post-

conviction relief under § 2255").  Those same principles compel the conclusion

that the Savings Clause permits consideration of Mr. Purkey's petition here.

*Second*, although *Ramirez* involved abandonment by counsel, and thus provided grounds for a Rule 60(b) motion, there is no indication its application of *Martinez* and *Trevino* is limited to that specific context. The Savings Clause, moreover, is triggered where the structure of § 2255 in the circumstances of a prisoner's case denies the prisoner the "reasonable opportunity" to receive judicial review of his conviction or sentence. The Supreme Court has held that ineffective assistance of collateral counsel—short of full abandonment—*can* have this effect. *Martinez*, 566 U.S. at 17; *Trevino*, 569 U.S. at 423.

The government also argues that applying the Savings Clause in this context "would create a constitutional right to effective assistance of post-conviction counsel" (Gov. Br. 35), but the Supreme Court in *Martinez* confronted and rejected this very same argument. There, the Court recognized that counsel's ineffectiveness "may establish cause" to excuse "procedural default of a claim of ineffective assistance at trial," *not* that prisoners had a constitutional entitlement to counsel in collateral proceedings. 566 U.S. at 9. Likewise here, the Court's recognition that ineffectiveness of initial-review § 2255 counsel triggers the Savings Clause would not amount to finding a constitutional entitlement to postconviction counsel. If, for example, Congress subsequently eliminated the Savings Clause, such a holding would no longer require that a prisoner who received ineffective assistance in initial postconviction review could proceed under

- 8 -

§ 2241.  Indeed, the Court has recognized that *Martinez* and *Trevino* conferred the "ability to challenge the effectiveness of one's § 2255 counsel" even in the absence of a constitutional right.  *Adams v. United States*, 911 F.3d 397, 411 (7th Cir. 2018).  The Court ought to hold that counsel's ineffectiveness renders § 2255 deficient and triggers the Savings Clause.

**B.     The Court's Savings Clause Jurisprudence Does Not Preclude Reversal In This Case**

The government makes much of the fact that Mr. Purkey's petition does not match the circumstances where the Court has previously applied the Savings Clause.  Gov. Br. 29-35.  To date, the Court has found § 2255 "inadequate or ineffective" (1) where a petitioner's claim turned on a retroactively applied change in statutory law made after his initial § 2255 motion, *Davenport*, 147 F.3d at 608, 610; (2) where a human rights tribunal subsequently held that the petitioner's sentence violated human rights norms, *Garza v. Lappin*, 253 F.3d 918, 920 (7th Cir. 2001); and (3) where the petitioner submitted evidence that his sentence was constitutionally unsound, *Webster*, 784 F.3d at 1139.  But the Court has never held that the Savings Clause may apply *only* in these circumstances.

Nor do specific pronouncements from this Court's caselaw preclude the relief Mr. Purkey seeks.  The government argues that the limitations expressed in *Webster*—specifically, that its holding only applied to cases involving previously-unavailable evidence that diligent counsel failed to find—demonstrate that

ineffective assistance of collateral review counsel should not trigger the Savings Clause. Gov. Br. 34. But *Webster* said no such thing and did not address the question now before the Court—namely, whether ineffective assistance of counsel during a federal prisoners' only opportunity to raise ineffective assistance of trial counsel claims renders § 2255 inadequate.

Nor does *Lombardo v. United States*, 860 F.3d 547 (7th Cir. 2017), counsel against Mr. Purkey's position. In *Lombardo*, the Court declined to hold that the principles announced in *Martinez* and *Trevino* warranted permitting an untimely motion under § 2255. *Id.* at 559-561. The Court's holding there is firmly rooted in its reluctance to upend well-settled law on the doctrine of equitable tolling or to disturb the clearly-stated statute of limitations at § 2255(f). *Id.* at 559-560. The Supreme Court has held that miscalculation or ignorance of a deadline—the attorney error at issue in *Lombardo*—does not constitute "extraordinary circumstances" that justify equitable tolling. *Id.* at 557. The Court in *Lombardo* was not presented with the question of whether collateral review counsel's ineffectiveness warrants application of the Savings Clause at § 2255(e). And that question does not run headlong into the hurdles of settled and contrary direct authority and a statutory bar to late filing.

### C. AEDPA Left The Savings Clause Unchanged

The government argues that reversal would run afoul of the statutory scheme enacted in the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). Gov. Br. 25-26, 40. AEDPA amended § 2255, among other things, to add a one-year statute of limitations at § 2255(f) and a bar on second or successive petitions, except in cases involving newly-discovered exculpatory evidence or a new, retroactive rule of constitutional law, at § 2255(h). But while AEDPA erected certain procedural hurdles to habeas relief, Congress did not do away with the Savings Clause, and the Court has resisted invitations to write it out of the statute. *Webster*, 784 F.3d at 1136 ("Our dissenting colleagues would throw the entire line of cases that began with *Davenport* out the window, … but their position essentially reads the savings clause of § 2255(e) out of the statute. We are not willing to take that step.").

The legislative history reveals that, when debating AEDPA, Congress said nothing illuminating about the Savings Clause or when it ought to be used, and certainly did not place any statutory limitations on that clause. *See Hale v. Fox*, 829 F.3d 1162, 1167 (10th Cir. 2016) ("AEDPA left § 2255(e) unchanged, and nothing in the statute's legislative history indicates how, if at all, the addition of § 2255(h) was intended to affect the meaning or scope of the savings clause."); *Davenport*, 147 F.3d at 609 ("Congress did not change [the "inadequate or

ineffective"] language when in [AEDPA] it imposed limitations on the filing of successive [§] 2255 motions.").[3]  This leaves open the possibility that federal prisoners may avail themselves of the writ of habeas corpus at § 2241 where § 2255 is "inadequate or ineffective" to challenge their detention.[4]

Moreover, AEDPA was enacted well before the Supreme Court recognized a prisoner's right to attack initial-review collateral counsel's failure to raise claims of ineffective assistance of trial counsel that have some merit.  As the Court has recognized, *Martinez* and *Trevino* "changed how courts should view claims of ineffective assistance of counsel at initial-review collateral proceedings."  *Adams*, 911 F.3d at 411.  That AEDPA did not permit such a claim as a basis for a second or successive petition under § 2255 says little about the proper resolution here. Surely, Congress could not have anticipated, or built into the statute, the ability to

---

[3]     It is no answer to say that the Savings Clause does not apply here because § 2241 lacks the same procedural hurdles that Congress imposed on § 2255.  *See* Gov. Br. 41.  Congress elected to leave the Savings Clause intact—thereby allowing federal prisoners, in certain circumstances, to file petitions under § 2241, *Davenport*, 147 F.3d at 609—and, at the same time, failed to impose any corresponding limitations on § 2241.

[4]     The government's concern over "forum shopping" is misplaced.  *See* Gov. Br. 46.  The Savings Clause opens the door to petitions filed under § 2241; § 2241, in turn, requires that petitions be filed in the district of confinement.  The language of § 2241 is not of Mr. Purkey's design, nor can he be said to have "shopped" for his location of confinement.  Unless and until Congress revises § 2241, federal prisoners must continue to file petitions for a writ of habeas corpus in the federal district encompassing their place of incarceration.  *See Light v. Caraway*, 761 F.3d 809, 812 (7th Cir. 2014).

vindicate a right that did not yet exist. Thus, AEDPA does not foreclose the application of the Savings Clause to Mr. Purkey's petition.

## II. MR. PURKEY'S INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS HAVE SOME MERIT

The parties agree that at this stage, Mr. Purkey "must demonstrate that his collateral review counsel was deficient and must make a substantial claim of ineffective assistance of trial counsel." *Brown v. Brown*, 847 F.3d 502, 513 (7th Cir. 2017). A "substantial" claim is one that "has some merit." *Martinez*, 566 U.S. at 14. Those requirements are sufficiently satisfied here.

### A. A Victim Of A Similar Crime Could Not Fairly Try Mr. Purkey Or Sentence Him To Death

At age 16, two girls named Jennifer were victims of sexual assaults. One was the victim of Mr. Purkey's crime—she did not survive the encounter. The other was one of his jurors. In this circumstance, it would be unreasonable to expect that the juror—Juror 13—could impartially decide Mr. Purkey's guilt or innocence. It would be unreasonable to expect that she could impartially decide if he lives or dies.

And the law does not. For obvious reasons, courts have held that the justice system cannot ask or expect victims of crimes to judge defendants accused of committing similar crimes. Instead, "courts have presumed bias in cases where the prospective juror has been the victim of a crime or has experienced a situation

- 13 -

similar to the one at issue in the trial." *Hunley v. Godinez*, 975 F.2d 316, 319 (7th

Cir. 1992).[5] As this Court explained in *Hunley*, when prior circumstances have

"placed the jurors in the shoes of the victim just before she was murdered," bias is

properly presumed. *Id.* at 319-320.

That is precisely this case. Juror 13 had been the victim of an attempted

rape, while the victim at trial was raped just before she was murdered.

Accordingly, Juror 13 was "in the shoes of the victim" and could not be impartial.

The presumption of bias makes particular sense in a case like this—a capital case

for a violent crime—with a high "potential for substantial emotional involvement,

adversely affecting impartiality." *Hunley*, 975 F.2d at 319-320 (describing this

potential as "the critical inquiry"). Indeed, it is hard to imagine a more

emotionally fraught situation, or one in which it is less reasonable to expect a juror

to be able to act objectively. Yet Mr. Purkey was found guilty and sentenced to die

---

[5]     This presumption has been applied in a large swath of cases, most less
extreme than this one: to an abused spouse in a murder case involving battered
wife syndrome, *Burton v. Johnson*, 948 F.2d 1150, 1159 (10th Cir. 1991); to a
juror whose sons were imprisoned for heroin-related crimes in a heroin conspiracy
trial, *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979); to a juror whose
lover had been killed by her husband, in a case accusing a man of killing his wife
and attacking her lover, *Jackson v. United States*, 395 F.2d 615, 616 (D.C. Cir.
1968); to bank employees in a bank robbery case, *United States v. Allsup*, 566 F.2d
68, 71 (9th Cir. 1977); to a robbery victim in a robbery trial, *U.S. ex rel. De Vita v.
McCorkle*, 248 F.2d 1, 9 (3d Cir. 1957); to a child-abuse victim in a trial involving
sexual abuse of a minor, *State v. Larue*, 722 P.2d 1039, 1042 (Haw. 1986).

under just these circumstances.  One teenage-assault-victim named Jennifer found him guilty and sentenced him to die for the alleged rape and murder of another.  The Sixth Amendment does not permit that fundamentally unfair result.

The government largely fails to respond to this fundamental unfairness.  It does not cite or acknowledge *Hunley*.  On the merits of this claim, it states only that "trial strategy would more reasonably explain counsel's decisions on his voir dire of Juror 13."  Gov. Br. 50.  But the government never says *what* strategy.  By contrast, in the only case it cites, *United States v. Lathrop*, 634 F.3d 931 (7th Cir. 2011) (cited at Gov. Br. 50), a strategy was clearly articulated.  There, the defendant had allegedly burned down his failing sports bar, and he and his attorney together decided not to strike a juror employed by his insurance company because he was a potentially sympathetic sports fan.  That case shows that a "strategy of silence by counsel could be reasonable" when there is, in fact, a strategy behind the silence.  *Lathrop*, 634 F.3d at 938.

Here, by contrast, Mr. Purkey's trial counsel had "no knowledge" of Juror 13's disclosure; one of his lawyer's sworn statement is that she "would have remembered this information about Juror #13 if [she] had seen it" and she "d[id] not believe [lead trial counsel] noticed the disclosure either, because he never mentioned it, nor did he raise it during voir dire."  App. 134, at 1170.  No strategy motivated this failure.  *See, e.g.*, *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir.

- 15 -

2012) ("The consequences of inattention rather than reasoned strategic decisions are not entitled to the presumption of reasonableness."). At a minimum, this claim "has some merit" and so is sufficiently "substantial" to proceed. *Martinez*, 566 U.S. at 14.

Instead of addressing the merits of this claim head-on, the government makes a convoluted procedural argument: that this Court should apply the Eighth Circuit's view of federal law instead of its own, which the government claims does not recognize implied bias. That is incorrect, on both counts.

*First*, this Court should apply its own view of federal law. "A single federal law implies a national interpretation," and "the norm is that each court of appeals considers [a] question independently and reaches its own decision, without regard to the geographic location of the events giving rise to the litigation." *Eckstein v. Balcor Film Inv'rs*, 8 F.3d 1121, 1126 (7th Cir. 1993); *see also In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (D. Ginsburg, J., concurring) ("[B]ecause there is ultimately a single proper interpretation of federal law, the attempt to ascertain and apply diverse circuit interpretations simultaneously is inherently self-contradictory.").[6] This

---

[6] The *Strickland* standard for ineffective assistance of counsel was, of course, established by the Supreme Court and applies nationwide. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("We established the legal principles that govern claims of ineffective assistance of counsel in *Strickland v. Washington* ….").

fundamental principle should and does apply in § 2241 proceedings.  As the Sixth

Circuit recently explained, "a rule following the court of confinement's law

comports with the background norm that each court should apply its own precedent

on the meaning of federal law. …  And while Congress could order a departure

from that default principle, it did not do so in 1948" when enacting § 2255.  *Hueso*

*v. Barnhart*, No. 18-6299, 2020 WL 104612, at \*10 (6th Cir. Jan. 9, 2020).[7]  So

this Court's law applies to proceedings under § 2241—and this Court has clearly

held that juror bias should be presumed in circumstances like these.

    *Second*, the government overreads the differences in interpretations anyway.

The Supreme Court itself has held that "[t]he bias of a prospective juror may be

actual or implied; that is, it may be bias in fact or bias conclusively presumed as

matter of law."  *United States v. Wood*, 299 U.S. 123, 133 (1936).  This Court too

has held that implied bias can arise in certain cases similar to this one.  *See Hunley*,

975 F.2d at 320.  And Eight Circuit caselaw (both now and at the time of

Mr. Purkey's trial) has reached the same conclusion.  *See Manuel v. MDOW Ins.*

*Co.*, 791 F.3d 838, 843 (8th Cir. 2015) ("[W]e have noted that 'prejudice may be

implied in certain egregious situations.'" (quoting *Sanders v. Norris*, 529 F.3d 787,

---

[7]    Whatever challenges Congress's decision might cause, the risk of forum shopping raised by the government (Br. 48) is not one of them.  Federal prisoners cannot "shop" for their place of confinement.  *See also supra* note 5.

792 (8th Cir. 2008)); *United States v. Needham*, 852 F.3d 830, 840 (8th Cir. 2017) ("Absent a juror's profession of the inability to be impartial, juror bias 'may be implied [only] in certain egregious situations.'" (quoting *Manuel*, 791 F.3d at 843)); *United States v. Tucker*, 243 F.3d 499, 509 (8th Cir. 2001).

The government does not ask the Court to apply current Eighth Circuit caselaw, however, but to apply two outlier, decades' old Eighth Circuit cases that it thinks are favorable. The first case, *United States v. Kelton*, 518 F.2d 531 (8th Cir. 1975), merely misstates a far narrower longstanding Eighth Circuit rule. In *Kelton*, the court wrote "this circuit has 'rejected the per se theory of implied bias,'" citing *United States v. Jones*, 486 F.2d 476 (8th Cir. 1973). *Kelton*, 518 F.2d at 533. But *Jones* did not reject the theory of implied bias generally—it simply applied a line of Eighth Circuit cases unbroken since Prohibition that has held that "*[i]n the context of jurors sitting on consecutive related cases*, … only actual bias of a juror violates the Sixth Amendment." *Tucker*, 243 F.3d at 509 (emphasis added).[8] Thus it rejected only the theory advanced by the petitioner in that case, implied bias based on prior jury service. *See Jones*, 486 F.2d at 477-478 ("We have heretofore

---

[8]    *See also Haussener v. United States*, 4 F.2d 884, 886 (8th Cir. 1925); *Cwach v. United States*, 212 F.2d 520, 529 (8th Cir. 1954); *Johnson v. United States*, 484 F.2d 309, 310 (8th Cir. 1973); *United States v. Williams*, 484 F.2d 176, 178 (8th Cir. 1973).

rejected the per se theory of implied bias advanced by Jones.").  No Eighth Circuit case had ever rejected the theory of implied bias altogether.

The other case the government cites is *Goeders v. Hundley*, 59 F.3d 73 (8th Cir. 1995).  That case did not hold that bias can never be presumed.  Instead, in dicta, it described the Supreme Court's decision in *Smith v. Phillips*, 455 U.S. 209 (1981), as requiring that result.  But *Smith* merely held that the typical remedy for an accusation of bias was a hearing on whether bias actually existed—not that bias can never be implied, as Justice O'Connor's oft-applied concurring opinion expressly explained.  The government cites no other Eighth Circuit case, Seventh Circuit case, or circuit decision that has read *Smith* the way that the court in *Goeders* did.  *See, e.g.*, *Conaway v. Polk*, 453 F.3d 567, 587 & n.22 (4th Cir. 2006) ("Not surprisingly, each court of appeals to have addressed the issue agrees that the doctrine of implied bias remains, after *Smith*, a settled constitutional principle. … Since the Court's 1982 decision in *Smith*, at least ten circuits have recognized the continuing viability of the implied bias principle." (citing, *inter alia*, *Hunley*, 975 F.2d at 320, and *Cannon v. Lockhart*, 850 F.2d 437, 441 (8th Cir. 1988))).  That is why the government must cite a quarter-century old outlier for its argument and ignore the Eighth Circuit's current view (shared by this Court) that bias should be implied in egregious circumstances like those present here.

In any event, Mr. Purkey's ineffective-assistance claim would succeed even under an actual-bias standard. His trial counsel egregiously and admittedly overlooked Juror 13's disclosure and therefore never tested her actual bias. His § 2255 counsel missed this issue too. This was a difficult case; the participation in deliberations of a juror with a reason to be biased—but whose bias was never tested due to trial counsel's ineffectiveness—raises a probability that the outcome of those deliberations would have been different that is "sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 688, 694 (1984). Mr. Purkey's claim is sufficiently substantial to require an evidentiary hearing to test the government's incredible position that a juror could listen objectively to evidence of a victim with her own name suffering the same crime that she did at the same age right before her death and then objectively decide whether the man accused was guilty or innocent, and whether he should live or die.

**B. Trial Counsel Ineffectively Mishandled Mr. Purkey's Coerced Statements That He Committed Kidnapping**

Misled to think that he would serve a lighter sentence in the federal system, Mr. Purkey told law enforcement that he had transported Jennifer Long across state lines involuntarily. That was not true. His trial counsel rightly moved to suppress those statements before trial. But that is where counsel's effectiveness on this issue ended. Most egregiously, trial counsel advised Mr. Purkey to adopt his pre-indictment statement to investigators that he took Ms. Long across state lines

against her will.  The government does not deny that this advice constitutes deficient counsel.  It instead argues that Mr. Purkey has not proved that his lawyer gave this advice and that Mr. Purkey was not prejudiced by this ineffectiveness.  Gov. Br. 53-54.  The first argument is irrelevant and the second is wrong.

*First*, Mr. Purkey has had no opportunity to present any evidence to prove his allegation that counsel gave this deficient advice.  His § 2255 counsel was deficient for failing to raise this issue—ensuring that Mr. Purkey had no chance to proffer evidence supporting his allegation then—and his § 2241 petition was denied without an evidentiary hearing.  So it is unclear what evidence the government expects to find in the record other than Mr. Purkey's allegation that he—one of only two people involved in this conversation—received this deficient advice from his lawyer.

*Second*, counsel's deficient handling of Mr. Purkey's coerced statements was indeed prejudicial.  The government's argument—that Mr. Purkey could have been impeached by each iteration of this statement, including the one at trial—both misses the point and highlights it.  Trial counsel's ineffectiveness is *why* there were so many damning statements available for impeachment.  He doomed the motion to suppress by advising Mr. Purkey to adopt his pre-indictment statement, and then took no steps to rehabilitate or clarify Mr. Purkey's testimony.  As the government underscores, trial counsel compounded that error at trial, sitting silently when

Mr. Purkey repeated his suppression testimony again, even though "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Simmons v. United States*, 390 U.S. 377, 394 (1968). Thus, although trial counsel could have prevented the government from using Mr. Purkey's suppression testimony at trial, he instead— by failing to object—*ensured* that the jury would hear it. Rather than show that there was no prejudice, the government's argument proves it.

**C.     The Overlooked Mitigation Evidence Would Have Mattered**

In answer to the halfhearted mitigation investigation and the volumes of evidence that trial counsel failed to uncover and present, the government offers a thirty-thousand-foot response:  that the trial-level mitigation case took two days and involved eighteen witnesses—including one who had reviewed a tall stack of papers—and § 2255 counsel litigated its deficient mitigation case to completion. Gov. Br. 51-52. Those facts, the government suggests, show that additional mitigation evidence would not have mattered. Take only a few steps closer, however, and it becomes clear that the mitigation investigation by trial counsel and § 2255 counsel was both deficient and prejudicial.

Start with the investigation itself. Trial counsel obtained funding for a mitigation expert but used it to pay an unqualified friend to play the dual role of

mitigation specialist (a job for which he had no experience or qualifications) and fact investigator (a job from which he was recently fired). The investigation included kicking at Mr. Purkey's ex-wife's door and accusing her of lying; crashing his daughter's wedding and interrogating her in front of her guests; and interviewing his brother about graphic sexual abuse with a teenage boy in tow. Section 2255 counsel, on the other hand, waited eight months before hiring a (seriously underfunded) mitigation expert to start an investigation—eight weeks before the filing deadline. Those unique facts put the mitigation case into serious question from the outset.

And all the likely pitfalls of this slapdash investigation were realized. Mr. Purkey's petition sets out in detail the mitigating evidence that was overlooked—which current § 2241 counsel was able to uncover with a reasonable investigation, despite the further passage of time. *See* Amended Petition for Writ of Habeas Corpus at 12-88, No. 2:19-cv-414 (S.D. Ind. Sept. 12, 2019), ECF No. 23 ("Pet."). For example, the limited mitigation testimony from Mr. Purkey's daughter, brother, and elderly aunt—the only testimony from his family, comprising less than 30 pages of trial transcript in total—does not discuss Mr. Purkey's multi-generational family history of trauma exposure and susceptibility to mental illness and neurogenerative disease. *See* Pet. 12-21. The government calls this information "marginal," Gov. Br. 53, but courts in analogous

contexts have disagreed, *see, e.g.*, *Poindexter v. Mitchell*, 454 F.3d 564, 579 (6th Cir. 2006) (forensic psychologist noting "four generations of alcoholism and physical abuse and emotional abuse"); *Bloom v. Calderon*, 132 F.3d 1267, 1273 (9th Cir. 1997) (trial counsel failed to discover, among other mitigation, that the defendant was "born into a family plagued by generations of mental illness and domestic abuse").[9]

Overall, there was a life's worth of physical, emotional, and sexual abuse and trauma that the jury did not hear. The insufficient investigation missed evidence of physical abuse, degradation, and humiliation that Mr. Purkey suffered outside his home at school, *see* Pet. 33-38, and evidence of three years of sexual molestation by his parish priest, when he was eleven to thirteen years old, *see* Pet. 40-41. It also failed to present fully Mr. Purkey's family history of and genetic vulnerability to PTSD, substance abuse, and addiction, as well as a vulnerability to violence in the context of posttraumatic stress and intoxication. One need only read Mr. Purkey's habeas petition alongside the transcript of the mitigation case at trial to realize that the government's characterization of this evidence as "marginal additional

---

[9]     *See also* American Bar Association, *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913, 1025 (2003) ("A multi-generational investigation extending as far as possible vertically and horizontally frequently discloses significant patterns of family dysfunction and may help establish or strengthen a diagnosis or underscore the hereditary nature of a particular impairment.").

information" cannot hold water.  The Supreme Court consistently has "found deficiency *and* prejudice in other cases in which counsel presented what could be described as a superficially reasonable mitigation theory during the penalty phase." *Sears v. Upton*, 561 U.S. 945, 954 (2010) (emphasis in original) (citing *Williams v. Taylor*, 529 U.S. 362, 398 (2000)); *Porter v. McCollum*, 558 U.S. 30, 40-41 (2009); *Rompilla v. Beard*, 545 U.S. 374, 378 (2005).  As the Court has explained, "We certainly have never held that counsel's effort to present *some* mitigation evidence should foreclose an inquiry into whether a facially deficient mitigation investigation might have prejudiced the defendant." *Sears*, 561 U.S. at 955 (emphasis in original).  There is a reasonable probability that full investigation of the mitigating evidence would have mattered to the outcome of Mr. Purkey's *habeas* claim.

# CONCLUSION

For the foregoing reasons, the Court should vacate the judgment of the district court and remand for further proceedings on the merits of Mr. Purkey's petition.

Respectfully submitted.

/s/ Alan E. Schoenfeld

REBECCA E. WOODMAN
ATTORNEY AT LAW, L.C.
1263 W. 72nd Terrace
Kansas City, MO 64114
(785) 979-3672

MICHELLE M. LAW
ASSISTANT FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF MISSOURI
901 St. Louis Street, Suite 801
Springfield, MO 65806
(417) 873-9022

ALAN E. SCHOENFELD
STEPHANIE SIMON
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

February 11, 2020

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 6,160 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Alan E. Schoenfeld
ALAN E. SCHOENFELD

February 11, 2020

# CIRCUIT RULE 30(d) CERTIFICATION

In accordance with Circuit Rule 30(d), the undersigned hereby certifies that all materials required by Circuit Rules 30(a) and (b) are included in Plaintiff-Appellant's Supplemental Appendix.

/s/ Alan E. Schoenfeld
ALAN E. SCHOENFELD

February 11, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Alan E. Schoenfeld
ALAN E. SCHOENFELD