# IN THE
# UNITED STATES COURT OF APPEAL
# FOR THE SEVENTH CIRCUIT

WESLEY I. PURKEY, )
)
Appellant, )
)
v. ) No. 19-3318
)
UNITED STATES OF AMERICA, )
and )
T.J. WATSON, Warden, )
)
Appellees. )

## UNITED STATES' RESPONSE IN OPPOSITION TO APPELLANT'S MOTION TO STAY EXECUTION

More than 15 years ago, a federal jury convicted Wesley Ira Purkey of kidnapping, raping, and murdering a 16-year-old girl and returned a verdict of death, as authorized by the Federal Death Penalty Act (18 U.S.C. §§ 3591-3599). Purkey's conviction and sentence were affirmed on appeal, and he has exhausted his post-conviction remedies. In July 2019, the Attorney General scheduled Purkey's execution for December 13, 2019. On November 20, 2019, a different court, in a separate proceeding, issued a preliminary injunction barring that execution. Last week, that stay was lifted, and on June 17, 2020, Purkey filed a motion to stay execution ("Mot. to Stay") in this case. Purkey, however, is not entitled to the requested stay because he cannot make a strong showing of probable success on the merits in this appeal and the balance of equities weighs in favor of not delaying his execution any longer.

# I. <u>ARGUMENT</u>

The standard for a stay is "prescribed in *Niken v. Holder*, 556 U.S. 418 (2009)." *Lee v. Watson*, No. 19-3399, 2019 WL 6718924, at *1 (7th Cir. Dec. 6, 2019). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Niken*, 556 U.S. at 433 (quotation omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (quotations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34. A court should consider "four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quotation omitted); *see also id.* at 435 (noting that factors three and four "merge when the Government is the opposing party").

In considering a motion for a stay, this Court evaluates "two critical factors": "(1) whether the inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits." *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (per curiam). Purkey's claims were both unnecessarily delayed and fail on the merits. Given the heavy weight this Court affords those two factors, this Court should deny his motion for a stay.

## A. *Purkey cannot succeed on the merits.*

"Before receiving a stay, an applicant must make a 'strong showing' of probable success on the merits." *Lee v. Watson*, No. 19-3399, 2019 WL 6718924, at *1 (7th Cir. Dec. 6, 2019). Because Purkey has brought what is in effect "a second or successive habeas appeal," this Court "must be especially circumspect in assessing the merits of [his] case" and "must determine that there are 'substantial grounds' upon which relief may be granted." *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (per curiam) (citing *Delo v. Stokes*, 495 U.S. 320, 321 (1990)); *see also Garza v. Lappin*, 253 F.3d 918, 921 (7th Cir. 2001) (holding that this heightened standard applies to a federal prisoner's § 2241 petition).

Even after full briefing and argument, Purkey has failed to make any showing of success on the merits, let alone the strong showing of probable success required for a stay. Purkey has failed to show that he can even bring his claims because he admits the claims would be successive claims barred under 28 U.S.C. § 2255, and he fails to show how the structure of that statute was inadequate or ineffective for him to have brought the claims before. But even if he could bring the claims pursuant to 28 U.S.C. § 2241, which he attempts but is barred from doing in this case, none of his claims have merit.

### 1. *Purkey's claims are barred second or successive claims under 28 U.S.C. § 2255 that cannot be brought under 28 U.S.C. § 2241.*

None of the cases Purkey relied upon in his brief – neither the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), nor this Court's decision in *Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015)

– mandate the result he seeks. That is principally because, as the Government argues in its brief, none of those cases involve, address, or even analogize to the Saving Clause of 28 U.S.C. § 2255, which requires a defect in the structure of § 2255 beyond the mere ineffective assistance of counsel to allow a prisoner to bring an action pursuant to 28 U.S.C. § 2241. *Webster v. Daniels*, 784 F.3d 1123, 1140 & n.9 (7th Cir. 2015) (en banc); *see also Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016) (holding the Saving Clause "requires a structural problem [that] forecloses even one round of effective collateral review unrelated to the prisoner's own mistakes" (quotation omitted)).

Nothing in the structure of § 2255 prevented Purkey's § 2255 counsel from bringing the three claims of ineffective assistance he now raises. Section 2255 presented a perfectly adequate and effective means for Purkey to raise these claims, and Purkey is not allowed to escape Congress's carefully crafted procedural safeguards to § 2255 simply because he did not bring the claims earlier.

The Government has fully briefed Purkey's original arguments for claiming he could proceed under 28 U.S.C.§ 2241, and in this response focuses instead on Purkey's new theory – presented for the first time at oral argument – that his statutory right to counsel in a § 2255 proceeding provided by 18 U.S.C. § 3599 means he has some right to effective assistance that entitles him to seek relief, not in his district of conviction under § 2255, but instead in his district of confinement under § 2241. Purkey does not cite to, or in any way refer to, § 3599 in either his merits brief or his reply brief. Thus, his new argument based on § 3599 is waived, and this Court should not consider it. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 771 (7th Cir. 2015).

Were this Court to consider the argument, Purkey's right to counsel during his § 2255 proceedings was statutory under 18 U.S.C. § 3599, not constitutional. *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987) (holding that neither the Due Process Clause not the Equal Protection Clause requires appointment of counsel for indigent prisoners collaterally attacking their criminal judgments). Because it is a statutory right, the Supreme Court has held that § 3599 does not carry with it the right to effective assistance on the part of that counsel. *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (explaining that where there is no constitutional right to counsel there can be no deprivation of effective assistance). In *Martinez*, the Supreme Court declined to address the constitutional issue of whether there is a right to effective assistance of post-conviction counsel, 566 U.S. at 8-9, and in doing so did not disturb its holding in *Torna* that § 3599 does not confer a right to effective assistance.

Similarly, after *Martinez*, the Supreme Court explicitly abrogated a Ninth Circuit decision that held that § 3599 implied a statutory right to competence in post-conviction proceedings. *See Ryan v. Gonzales*, 568 U.S. 57, 64-71 (2013) (abrogating *Rohan v. Woodford*, 334 F.3d 803 (9th Cir. 2003). The *Gonzales* Court's rejection of the Ninth Circuit's location of a right to competence in the text of § 3599 applies equally to Purkey's current attempt to locate a right to effective assistance in that statute as well.

While it does not confer a constitutional or statutory right to effective assistance, § 3599 nonetheless provides front-end protections to ensure competent counsel. Death penalty prisoners' statutory right to counsel during § 2255 proceedings comes with specific qualifications for the attorney's appointment. 18 U.S.C. § 3559(b), (c), and (e).

Section 3599's requirement for experienced counsel provides significant benefits for capital defendants in post-conviction proceedings. If Congress had further intended the statute to confer a right to effective assistance of counsel, it would have included it.

In addition, the statutory right of § 3599 fails to provide any meaningful limiting principle for Purkey's interpretation of § 2241. Purkey claimed at argument that § 3599 provides a ground for this Court to limit the availability of the Saving Clause to bring second and successive claims of ineffective assistance of trial counsel to only death penalty prisoners who were entitled to counsel under that statute. To the extent that argument is based on the right to counsel in § 3599, the Supreme Court's rejection of a statutory right to effective assistance completely undermines it. To the extent that argument remains rooted in *Martinez*, both *Martinez*'s extension to pro se defendants and the separate right to counsel in any § 2255 proceeding that goes to an evidentiary hearing provided by Rule 8(c) of the Rules Governing Section 2255 Proceedings demonstrate that § 3559 cannot provide the limit Purkey claims.

Moreover, reading a limited, but undefined, right to effective assistance into § 3599, beyond the guarantees of competence already afforded by that statute, would lead to absurd results for death-penalty defendants that either elect to proceed pro se or retain counsel on collateral review. Prisoners that decline counsel appointed under the statute would not be entitled to effective assistance, but those who accept appointed counsel would. That result alone demonstrates the error in reading a right into a statute where the plain language does not provide for it. Section 3599 does not open a unique gateway to the Saving Clause, and this Court should reject Purkey's contentions at oral argument that it does.

In *Martinez*, the Supreme Court did not create any new basis for relief. It created a limited, equitable remedy that removed the bar of procedural default for claims of ineffective assistance of trial counsel for state prisoners seeking relief under § 2254. 566 U.S. at 16-18. Nearly ten years before the Supreme Court lifted that same bar for federal prisoners in *Massaro v. United States*, 538 U.S. 500 (2003). *See also Crutchfield v. Dennison*, 910 F.3d 968, 975 (7th Cir. 2018). *Martinez* does nothing else, and it does not create a new, substantive right to effective assistance to post-conviction counsel that has no root in the Sixth Amendment, the Due Process Clause, or any statute. The claims Purkey wishes to make were not impeded in any way by the structure of § 2255 and he cannot bring them in this case.

2. <u>*None of Purkey's three claims of ineffective assistance of trial counsel have merit.*</u>

Although *Martinez* and its progeny do not apply to the Saving Clause of § 2255, Purkey's claims nonetheless fail under *Martinez* because not one is a "substantial claim," that is, a claim that has "some merit." 566 U.S. at 14.

a. *Claim One*

The presumption that Purkey's trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," places the burden on Purkey to show deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Purkey attempts to meet this burden by claiming that his trial counsel was ineffective for failing to strike a juror who "was biased as a matter of law" (Purkey Mot. to Stay at 1), despite the Eighth Circuit's acknowledgement that at the time of

Purkey's trial "[o]ur case law is inconsistent as to whether juror bias *may ever* be presumed." *Sanders v. Norris*, 529 F.3d 787, 791 (8th Cir. 2008) (emphasis added). Purkey cannot sustain a claim of deficient performance given the lack, or at least unsettled availability, of the very challenge he claims counsel was deficient for not making in the circuit in which the trial took place. *See also New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011) (holding counsel's performance generally not deficient for failing to "raise arguments that require the resolution of unsettled legal questions).

Attempting to shift the burden on the showing of deficiency, Purkey repeatedly claimed at oral argument that the Government has never provided any reason for his trial counsel's decision not to inquire about Juror 13's reported attempted rape. This is not correct. In its response before the district court, the Government noted that, "questioning Juror 13 to establish an implied bias would have been poor trial strategy as the Eighth Circuit did not recognize that as a grounds for disqualification, but such questions would have highlighted the topic of sexual assault in the minds of other jurors." (DCD 49 at 54.)[1] The Government also noted that "[r]eading Juror 13's questionnaire, however, it is just as easy to speculate that Duchardt wanted her on the jury," because she "stated in her questionnaire that the most important cause of crime was 'bad parenting,'" which showed a receptiveness to his mitigation case, and because "Purkey presented a defense at the guilt phase that he did not kidnap Jennifer Long, he never contested sexually assaulting or

---

[1]"DCD" refers to the district court docket entries in the underlying case, *United States v. Purkey*, 01-00308-01-CR-W-FJG.

murdering her," which greatly deemphasized any alleged similarity of experience. (DCD 49 at 55-56.)

Contrary to Purkey's current argument that Juror 13 was biased against him, in her questionnaire and during voir dire, Juror 13 showed a significant sympathy for Purkey's defense, stated the Government needed "strong evidence" of guilt for the death penalty, and affirmed her willingness to impose a sentence of life. (DCD 49 at 56-57.) Taken as a whole, it is reasonable for Purkey's trial counsel to have viewed Juror 13 as favorable to Purkey's case, and his questions about her availability to serve despite having a young child both showed his familiarity with her questionnaire and suggested that he was trying to ensure a favorable juror would be available to serve.

Purkey is correct that the record contains nothing directly from his lead trial counsel illuminating his thoughts regarding Juror 13. But Purkey's attempts to fill that void with the pure speculation by co-counsel, who admitted to having nothing to do with juror selection, that lead counsel must not have noticed the mention of a rape on Juror 13's questionnaire fail as well. (DCD 49 at 57-58.) While co-counsel provided an affidavit, sworn speculation is still speculation, and co-counsel's speculation in this case provides no ground for even an evidentiary hearing on the effectiveness of lead counsel's representation, let alone a basis for this Court to find the claim has merit.

In addition to failing to establish deficient performance, Purkey also cannot make a strong showing of prejudice required under *Strickland* where Juror 13 was not presumed biased and demonstrated no actual bias. *See United States v. Tucker*, 2423 F.3d 499, 509 (8th Cir. 2001) ("But without resolving whether or not presumed bias can support a grant

of a new trial in our circuit, we observe that the idea of presumed bias is reserved for extreme cases, such as when a juror is a close relative of a party or victim in the case.”). Juror 13 did not present an extreme situation, and the alleged similarity between her questionnaire disclosure and the facts of the case alone does not create disqualifying bias, especially where she affirmed her ability to follow the facts and law of the case.

Both below and on appeal, Purkey fails to cite a case where a court found error in seating a juror who, like Juror 13, was unrelated to a party or victim, fully disclosed the ground for any alleged bias before or during voir dire, and also unequivocally stated her ability to impartially decide the case based on the facts and the evidence. *Compare English v. Berghuis*, 900 F.3d 804, 817-18 (6th Cir. 2018) (juror deliberately omitted material information); *with Logan v. Lockhardt*, 994 F.2d 1324, 1327 (8th Cir. 1993) (holding that juror that stated that defense counsel had “‘to show [ ] that . . . he’s innocent’” should not have been stricken for implied bias because she “went on to say that she has no bias in the matter”).[2]

---

[2]*See also United States v. Gonzalez*, 214 F.3d 1109, 1114 (9th Cir. 2000) (reversing where “juror is unable to state that she will serve fairly and impartially despite being asked repeatedly for such assurances”); *Burton v. Johnson*, 948 F.2d 1150, 1158-59 (10th Cir. 1991) (juror was dishonest in failing to disclose past abuse when asked during voir dire); *United States v. Eubanks*, 591 F.2d 513, 516-17 (9th Cir. 1979) (juror stated in questionnaire that he had no children and did not disclose during voir dire that sons were convicted of similar crimes); *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977) (jurors were tellers at different branch of bank robbed); *Jackson v. United States*, 395 F.2d 615, 616-17 (D.C. Cir. 1968) (juror did not disclose similarity to present case despite area being “probed generally” during voir dire and continued to deny similarity at post-trial hearing, which the court found not credible); *U.S. ex rel. De Vita v. McCorkle*, 248 F.2d 1, 9 (3d Cir. 1957) (juror in robbery trial did not disclose being prior robbery victim when asked

Purkey also vastly overplays the similarities between Juror 13 and Jennifer Long, whom Purkey kidnapped, raped, and murdered, dismembering and burning her remains to hide his crime. According to her disclosure, Juror 13, who at the time was a 27-year-old civil engineer with a husband and young child, was the victim of an "attempted rape, but I dropped the charges," in 1991. Nothing in that statement implies that the incident Juror 13 reported bore any resemblance to the crime Purkey committed on Jennifer Long.

As the Tenth Circuit observed in *Gonzales v. Thomas*, "to hold that no rape victim could ever be an impartial juror in a rape trial would, we think, insult not only all rape victims, but also our entire jury system, which is built upon the assumption that jurors will honestly try to live up to the sanctity of their oath." 99 F.3d 978, 989-90 (10th Cir. 1996) (quotation and alteration omitted) (holding juror that suffered a prior rape was not disqualified as impliedly bias in rape case because experience was different); *see also United States v. Thompson*, 450 F.3d 840, 843 (8th Cir. 2006) (holding no error in bank robbery trial for refusing to strike juror who was a bank teller in a different state for cause for implied bias because "the fact that someone holds a position similar to that of a key witness is not a basis for excluding her where there is no indication of bias").[3]

---

during voir dire); *State v. Larue*, 722 P.2d 1039, 1042 (Haw. 1986) (juror did not reveal prior sexual assault during voir dire).

[3]In his reply brief, and again at oral argument, Purkey attempted to extend his argument to include a claim of actual bias. (Purkey Reply Brf. 20.) That argument is waived. *United States v. Waldrip*, 859 F.3d 446, 450 n. 2 (7th Cir. 2017) ("Arguments raised for the first time in a reply brief are waived.").

### b.     Claim Two

Purkey's second claim is that his post-conviction counsel was ineffective by not providing additional evidence of mitigation sufficient to show that his trial counsel was ineffective for failing to provide sufficient evidence of mitigation.   The Eighth Circuit rejected the same underlying claim – that Purkey's trial counsel ineffectively presented his mitigation case – on appeal from Purkey's § 2255 motion because "it is not substantially likely that the jury would have returned a different sentence had Purkey's proffered evidence been presented to it."   *Purkey v. United States*, 729 F.3d 860, 868 (8th Cir. 2013).   Purkey fails to provide any new information in this case that would change that analysis.   (*See* DCD 49 at 66-79.)   Purkey's post-conviction counsel was effective in challenging his trial counsel's effectiveness; the challenge, like its current reincarnation, lacked merit.

### c.     Claim Eight

Purkey finally claims, based on pure speculation, that trial counsel advised Purkey to lie at his suppression hearing.   (Purkey Reply Brf. 21 ("So it is unclear what evidence the government expects to find in the record other than Mr. Purkey's allegation . . . .").) The lack of any evidentiary basis dooms that claim in a habeas proceeding, which requires a complaint signed under penalty of perjury that states the specific facts underlying each ground.   *See* Rule 2(b) of the Rules Governing Section 2255 Proceedings; *Prewitt v. United States*, 83 F.3d 812, 819-20 (7th Cir. 1996) (affirming denial of an evidentiary hearing because movant "provided only allegations, rather than proof" and "conclusory

allegations do not suffice"). This Court should summarily reject Purkey's baseless attempt to impugn the integrity of his trial counsel.

**B.      *Purkey unnecessarily delayed in asserting his claims.***

"A court considering a stay must also apply a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (quotation omitted). "[S]omeone who waits years before seeking a writ of habeas corpus cannot, by the very act of delay, justify postponement of the execution." *Lee*, 2019 WL 6718924, at *2 (7th Cir. Dec. 6, 2019) (citing *Nelson v. Campbell*, 541 U.S. 637 649-50 (2004)). Purkey waited years to bring these claims, and that unnecessary delay warrants denial of his motion.

Setting aside the fact that Juror 13's questionnaire and her voir dire are part of the record of Purkey's trial that has not changed since 2003, even by Purkey's own account, he knew all of the facts he needed to raise the juror issue no later than the date of O'Sullivan's affidavit: May 3, 2017. (DCD 27 at 102; Appx. 1166-72.)[4] Purkey's own filings demonstrate that his § 2241 counsel knew of the potential claim by at least the date of O'Sullivan affidavit, if not substantially before, but did not raise the claim in any court until over two years later, and over a month after Purkey was scheduled for execution.

Purkey provides no explanation for why he unnecessarily waited years to first raise this or his other two claims remaining claims. While Purkey asserts that he did not

---

[4]"Appx" refers to the Appendix to Purkey's § 2241 petition, entered in the docket below, *Purkey v. United States*, 19-cv-00414-JPH-DLP, at DCD 23.

"strategically delay in bringing his § 2241 petition," (Purkey Mot. to Stay at 11), he admits that he hurried to complete that petition only after learning of his execution date. (Purkey Mot. to Stay at 11.) That is, Purkey admits to not bringing his present claims when he learned of them, and that delay remains both unexplained and unnecessary.

Lastly, Purkey's motion misunderstands what it means to delay a claim in this context. While Purkey claims that he did not unnecessarily delay because he did not wait "until the eve of his December 2019 execution date" to file (Purkey Mot. to Stay at 11), that is not the focus of this Court's analysis. Rather, this Court has looked to the time after the discovery of the grounds for a claim as the benchmark for delay. *See Lee*, 2019 WL 6718924, at *2 (7th Cir. Dec. 6, 2019) (holding that a more than four-year delay in bringing § 2241 petition is a consideration that warrants denying a stay). Here, by waiting to bring a lengthy petition, knowing the time required to litigate such claims both before the district court and on appeal, Purkey did unnecessarily delay in bringing these claims, and his motion for stay should be denied.

## C.      *The balance of equities weighs against a stay.*

"[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill*, 547 U.S. at 584. "Both the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Id.* Once the "lengthy [post-conviction proceedings] have run their course," "finality acquires an added moral dimension," and "[o]nly with real finality can the victims of crime move forward." *Calderon v. Thompson*,

523 U.S. 538, 556 (1998). "To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." *Id*. (quotation and citation omitted).

Purkey claims that by not scheduling his execution in the years since he exhausted his post-conviction review in 2014, the Government undermined the urgency surrounding his execution. (Purkey Mot. to Stay at 9.) But the Government should not be faulted for undertaking its grave responsibility to select a mechanism for implementing that punishment in a conscientious manner. After years spent locating a reliable drug source and developing a federal protocol – and long after Purkey has exhausted his many available challenges to his conviction and sentence on direct appeal and on collateral review under § 2255 – the Government has a powerful and well-recognized interest in proceeding with the administration of justice as planned.

The Government recognizes that this Court takes the prospect of an irreparable injury as established in a capital case. *Chrans*, 50 F.3d at 1360. But even acknowledging that prospect, this Court denied a stay due to the petitioner's inability to establish a probability of success on the merits. *Id*. at 1361. As Purkey likewise cannot establish a strong showing of probability of success on the merits, the equities weigh in favor of denying a stay in this case as well.

Purkey's attempts to use meritless litigation to delay his execution should not be allowed to frustrate the Government's interest in enforcing the law and the interests of his victims' families' in closure any longer. In *Bucklew v. Precythe*, the Supreme Court recently recognized this concern where that defendant's "suit in the end amounts to little

more than an attack on settled precedent, lacking enough evidence even to survive summary judgment." 139 S. Ct. 1112, 1134 (2019). Purkey's claims in this case fare no better and provide no basis to stay his execution.

## II.   <u>CONCLUSION</u>

For the reasons stated above, this Court should deny appellant Wesley Ira Purkey's motion for stay.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By   /s/ *Brian P. Casey*

BRIAN P. CASEY
Special Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri  64106
Telephone:  (816) 426-3122
Fax:  (816) 426-5186
E-mail:  Brian.Casey@usdoj.gov

*Attorneys for Respondent*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 22, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Rebecca E. Woodman
Attorney at Law, L.C.
1263 West 72nd Terrace
Kansas City, Missouri   64114
Email:   rewlaw@outlook.com

*Attorney for Appellant*

 /s/ *Brian P. Casey*
Brian P. Casey
Special Assistant United States Attorney