# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| **WESLEY IRA PURKEY**, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | Appeal No.: 19-3318 |
| **WARDEN OF USP TERRE HAUTE**, | ) | |
| **UNITED STATES OF AMERICA,** | ) | DEATH PENALTY CASE |
| | ) | EXECUTION SCHEDULED |
| | ) | FOR JULY 15, 2020 |
| Respondents-Appellees. | ) | |

---

## APPELLANT'S REPLY IN SUPPORT OF MOTION
## TO STAY EXECUTION

---

When evaluating whether to stay an execution, the Court considers whether

the applicant has shown a "significant possibility of success on the merits," *Hill v.*

*McDonough*, 547 U.S. 573, 584 (2006), whether irreparable harm will result

(which the Government concedes), and whether the balance of equities favors a

stay, *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007).  In connection with the

last element, the Court weighs, among other things, whether "the inmate has

delayed unnecessarily in bringing the claim."  *Nelson v. Campbell*, 541 U.S. 637,

649-650 (2004).[1]  Mr. Purkey has shown that the stay factors weigh in his favor,

---

[1] Citing a non-precedential order (*Lee v. Watson*, 2019 WL 6718924 (7th Cir. Dec. 6, 2019)) and an inapposite immigration case (*Nken v. Holder*, 556 U.S.

including that there is a substantial basis for his claims and that he has not unnecessarily delayed.

## I. Mr. Purkey Has Demonstrated A Likelihood Of Success On The Merits

### A. The Savings Clause Applies

The Savings Clause at 28 U.S.C. § 2255(e) applies where, as here, § 2255 is "inadequate or ineffective" to test a capital prisoner's conviction and sentence. *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015). The Government says that "[n]othing in the structure of § 2255 prevented Purkey's § 2255 counsel from bringing the three claims of ineffective assistance he now raises," but this misses the point. Dkt. No. 34 ("Opp.") at 4. A federal prisoner must get at least one reasonable opportunity to challenge his trial counsel's effectiveness. *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), as interpreted by this Court in *Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015), underscore that a prisoner loses that sole opportunity when he is aided by ineffective initial collateral-review counsel. Counsel's ineffectiveness renders § 2255 inadequate to test the prisoner's substantial claims of ineffective assistance of trial counsel, which—as here—no court will ever hear.

---

418 (2009)), the Government claims that some heightened standard applies to stays of execution. But the standard is well-settled by Supreme Court and Seventh Circuit precedent.

The Government offers another red herring—that Mr. Purkey may not offer a prudential limitation on applying the Savings Clause for the Court's consideration because he failed to raise it in his opening brief. *See* Opp. 4. Mr. Purkey's statement of the issue presented here was clear: "Whether … an individual *sentenced to death* who received ineffective assistance of counsel in connection with his § 2255 petition … may file a petition for a writ of habeas corpus under § 2241[.]" Dkt. No. 10 ("Br.") at 5 (emphasis added). Federal capital defendants have a statutory right to counsel, including in collateral-review proceedings, under 18 U.S.C. § 3599. The right to counsel "is *vital* where a prisoner faces the death penalty, which is 'qualitatively different from a sentence of imprisonment, however long,'" and which has a "'corresponding difference in the need for reliability that death is the appropriate punishment.'" Br. 28 (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)). The Court need only decide the issue for capital defendants. That Mr. Purkey's opening brief does not cite § 3599 is immaterial.

Nor is it relevant that capital defendants' right to counsel in collateral-review proceedings is statutory, not constitutional. *See* Opp. 5-6. *Martinez* and *Trevino* hold that a prisoner may challenge collateral counsel's effectiveness even where counsel is not constitutionally guaranteed. *See* Dkt. No. 20 ("Reply") at 9; *Adams v. United States*, 911 F.3d 397, 411 (7th Cir. 2018) ("The district court erred by

relying on a rigid rule that because § 2255 proceedings are civil, there is no constitutional right to counsel and thus no ability to challenge the effectiveness of one's § 2255 counsel."). The Government's reliance on *Ryan v. Gonzales*, 568 U.S. 57 (2013), for the proposition that the Supreme Court has rejected a "right to competence in … § 3599" is misplaced. Opp. 5. *Ryan* addressed only a defendant's competence to stand trial and found that "counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence." 568 U.S. at 68.

**B.     Mr. Purkey Has Shown A Sufficient Likelihood That His Claims Are "Substantial" With "Some Merit"**

In this appeal, Mr. Purkey needs to show only that he has at least one "substantial claim"—that is, one claim with "some merit." *Martinez*, 566 U.S. at 14. That "requirement is not a high bar." *Crutchfield v. Dennison*, 910 F.3d 968, 974 (7th Cir. 2018). This stay application, however, requires an even lower showing: only that there is a sufficient *likelihood* that one of Mr. Purkey's claims has some merit. That requirement is easily met.

Start where the Government does, with Juror 13. The Government spends nearly one-third of its brief on this claim, undermining any assertion that the claim is wholly without merit.

None of the Government's arguments suggests otherwise. It first says that contemporaneous Eighth Circuit law was "unsettled" on implied bias—a

substantial backtrack from its earlier erroneous argument that Eighth Circuit law

had *rejected* implied bias.  *See* Dkt. No. 17 ("Gov. Br.") at 49-50.  But Eighth

Circuit law is not materially unsettled and was not during Mr. Purkey's 2003 trial.

*See* Reply 17-19.  In fact, in 2003 the most recent Eighth Circuit pronouncements

had recognized implied bias.  *See Fuller v. Bowersox*, 202 F.3d 1053, 1056 (8th

Cir. 2000) ("For habeas corpus purposes, such 'bias may be found either by an

express admission, or by proof of specific facts which show such a close

connection to the facts at trial that bias is presumed.'"); *see also United States v.*

*Tucker*, 243 F.3d 499, 509 (8th Cir. 2001); *Mann v. Thalacker*, 246 F.3d 1092,

1097 (8th Cir. 2001).[2]  But even under the Government's incorrect view, trial

counsel was still constitutionally deficient in his failure to recognize, explore, or

challenge Juror 13's potential *actual* bias—which was and is ineffective assistance

of counsel.[3]  *See Johnson v. Armontrout*, 961 F.2d 748, 755 (8th Cir. 1992).

Nor is this claim "wholly without factual support."  *Martinez*, 566 U.S. at

16; *see* Opp. 8-11 (questioning the factual support for the claim).  Juror 13's

---

[2] The case (from 2008) the Government cites to show Eighth Circuit law was unsettled in 2003 itself cites *Fuller* as acknowledging implied bias.  *See Sanders v. Norris*, 529 F.3d 787, 791 (8th Cir. 2008).

[3] Mr. Purkey did not forfeit the argument that his claim would succeed under an actual bias standard.  He raised that argument in reply to the government's claim in its response brief (at 49-50) that the Eighth Circuit only recognizes claims for actual bias.  And the government acknowledges (Gov. Br. 49) that Mr. Purkey advanced this argument in the district court.

questionnaire disclosed that she was the victim an attempted rape at the same age as the victim in Mr. Purkey's case, with whom she shared a name.  Trial counsel never questioned Juror 13 on this disclosure.  And trial co-counsel's sworn testimony is that she "had no knowledge" of this disclosure and did "not believe [trial counsel] noticed the disclosure either, because he never mentioned it, nor did he raise it during voir dire," even though "prior to trial" she "met [trial counsel] at … his office, to look over the juror questionnaires."  Dist. Ct. ECF No. 23 ("App.") at 1170.

The Government does not dispute that the record contains this factual support.  Indeed, it acknowledges (at Opp. 9) that "the record contains nothing directly from … lead trial counsel illuminating his thoughts regarding Juror 13."[4] Rather, the Government (1) disputes whether this factual support creates implied bias and (2) suggests implausibly that the decision not to strike Juror 13 was strategic.  *See* Opp. 7-11.  Neither argument holds water.

*First*, the facts here satisfy the standard for implied bias.  Juror 13 was a clone of the victim in the relevant respects.  None of the irrelevant differences the

---

[4] The Government claims that trial co-counsel "admitted to having nothing to do with juror selection."  Opp. 9.  That assertion cannot be squared with the record, which makes clear that co-counsel met with lead counsel before trial at his office to review the jury questionnaires—which are, of course, the aspect of juror selection relevant to this appeal.  Whether she participated in other aspects of juror selection such as voir dire is irrelevant.

Government describes (at Opp. 11), like Juror 13's job at the time of trial, suggests otherwise. At a minimum, they cannot show the claim has *no* merit.

*Second*, the Government's invented strategic reasons for trial counsel's failure even to question, let alone strike, an impliedly biased juror on the relevant disclosure are not persuasive. The Government admits there is no evidence that trial counsel actually considered these hypothetical strategic points; to the contrary, all available evidence shows that these failures were inadvertent. At most, the Government's arguments suggest that an evidentiary hearing may be useful to resolve disputed factual issues. But they come nowhere close to establishing that Mr. Purkey's claim lacks "some merit."

The Government also claims (at Opp. 10) that Mr. Purkey has not cited a case finding implied bias where the juror was unrelated to a party or victim, the ground for alleged bias was fully disclosed, and the juror stated her ability to impartially decide the case. That case is *Hunley v. Godinez*, 975 F.2d 316 (7th Cir. 1992), this Court's central implied-bias decision (cited at Br. 8, 25; Reply 14-15, 17). There, the jurors were not related to a party or victim; the ground for alleged bias—that they had been subject to a "burglary [that] placed the jurors in the shoes of the victim just before she was murdered," *id.* at 319—was fully disclosed; and the trial court had held a hearing at which "[e]ach juror stated that the burglary did

not affect his or her decision to return a guilty verdict," *id.* at 317. The Court found implied bias nonetheless.

The Government similarly fails to show that each of Mr. Purkey's other claims lacks merit. On the mitigation claim, it asserts that "Purkey fails to provide any new information in this case that would change [the § 2255 court's] analysis." Opp. 12. Not so—Mr. Purkey sets out that new information in his petition (at 13-82, 131-135) and before this Court (Br. 9, 27-28; Reply 23-25), and he has cited authority showing that this kind of information has a reasonable probability of changing a court's analysis (Reply 23-24 & n.9).

On the suppression testimony, the Government ignores trial counsel's failure to object when the Government used it to prove guilt, contravening *Simmons v. United States*, 390 U.S. 377 (1968), or his failure to rehabilitate Mr. Purkey's suppression or trial testimony. Those errors are plain on the face of the record. Instead, the Government objects—for the first time at any level—that Mr. Purkey's claim about trial counsel's suppression advice "lack[s] … any evidentiary basis" merely because Mr. Purkey did not sign his petition under penalty of perjury under the Habeas Rules. Opp. 12. But this Court has made clear that this technical requirement does not justify rejecting habeas claims, since "the better practice is to give a petitioner an opportunity to conform his petition to procedural requirements." *Kafo v. United States*, 467 F.3d 1063, 1069 (7th Cir. 2006)

8

(vacating and remanding when district court dismissed habeas petition for lack of evidence because the petition was unsigned).

The Government therefore fails to show that these claims do "not have any merit" or are "wholly without factual support." *Martinez*, 566 U.S. at 16.

## II. The Equities Favor Mr. Purkey, Who Has Not Unnecessarily Delayed

The "critical factor" in the balance of the equities is "whether the inmate has delayed *unnecessarily* in bringing this claim"—by engaging in "obvious[ly] dilatory tactics" to "manipulate the judicial process." *Lambert*, 498 F.3d at 451-452 (emphasis added).

Mr. Purkey has never engaged in dilatory or manipulative delay tactics. To begin, he *did* bring his underlying claims at such a time to allow consideration of the merits without requiring a stay—he filed in August 2019 when his execution was scheduled for December, and the district court reached its decision in November. He did not strategically await the eve of execution to file. Nor did he await the eve of his new execution date to seek a stay from this Court, filing this motion two days after the date was announced and four weeks before the execution date. The Government now says (citing only a nonprecedential order in another case) that whether Mr. Purkey strategically waited until the eleventh hour "is not the focus of this Court's analysis." Opp. 14. Would the Government make that argument if Mr. Purkey *had* waited until December 2019 to file his petition, or

9

until July 14 to seek a stay from this Court?  Of course not—in that case, it would have surely insisted that the Court "consider the last-minute nature" of the request. *Gomez v. U.S. Dist. Ct. of N. Dist. of Cal.*, 503 U.S. 653, 654 (1992).  This consideration cannot matter only when it favors the Government.

Nor does the record suggest any other tactical, manipulative, or unnecessary delay.  The record proves that Mr. Purkey did not finalize his petition and then shelve it until a strategic moment, since it relies on evidence obtained through the very month of filing.  *See* App. 78-88 (August 2019 declarations discussing mitigation evidence related to inter-generational trauma).  The Government fails to respond to this argument altogether.  Instead, it objects that trial co-counsel's affidavit about Juror 13 was obtained in May 2017.  *See* Opp. 13.  But while the Juror 13 claim has moved to the forefront of this appeal—once again proving it has "some merit"—Mr. Purkey's § 2241 petition contained seven other claims that Mr. Purkey was demonstrably pursuing up until filing.  The Government's unsupported statements to the contrary—that Mr. Purkey "waited years to bring these claims" and "provides no explanation for why he unnecessarily waited years to first raise," Opp. 13—ignore the record and Mr. Purkey's opening motion papers.  The time spent preparing the § 2241 petition is explained and necessary, with *nothing* in the record suggesting Mr. Purkey tactically or manipulatively postponed in filing it.  And the Government's objection that Mr. Purkey hurried to

10

complete his petition once his execution date was set misses the point: Mr. Purkey and his § 2241 counsel diligently pursued his claims while there was no execution date, but then hurried to complete it *by necessity* when the Government sprung a surprise new execution protocol and set an execution date for a few months later.

Finally, the equities do not otherwise favor the Government. The Government argues that it should not be faulted for waiting years to schedule Mr. Purkey's execution, Opp. 15, but that is no answer to why, after all those years, the execution must take place before this Court has time to resolve Mr. Purkey's appeal. Nor is the Government correct that because Mr. Purkey "cannot establish a strong showing of probability of success on the merits, the equities weigh in favor of denying a stay." *Id.* Mr. Purkey has established that his claims have at least "some merit"—which is all that is necessary to establish likelihood of success. In any event, likelihood of success and the equities are separate factors in the stay analysis, so satisfaction of one does not affect the other.

## CONCLUSION

For these reasons, the Court should stay Mr. Purkey's execution pending final resolution of this appeal.

Respectfully submitted.

/s/ Alan E. Schoenfeld

REBECCA E. WOODMAN  
ATTORNEY AT LAW, L.C.

ALAN E. SCHOENFELD  
STEPHANIE SIMON

1263 W. 72nd Terrace
Kansas City, MO 64114
(785) 979-3672

MICHELLE M. LAW
ASSISTANT FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF MISSOURI
901 St. Louis Street, Suite 801
Springfield, MO 65806
(417) 873-9022


June 25, 2020

WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A).

1.      Exclusive of the exempted portions of the motion, as provided in Fed. R. App. P. 32(f), the motion contains 2,588 words.

2.      The motion has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied on the word count feature of this word processing system in preparing this certificate.

/s/ Alan E. Schoenfeld
ALAN E. SCHOENFELD

June 25, 2020

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Alan E. Schoenfeld
ALAN E. SCHOENFELD